## Commonwealth Trust Company of Pittsburgh et al., Appellants, *v.* Allegheny Cemetery.

Argued May 27, 1936. Before KEPHART, C. J., SCHAF-
FER, MAXEY, LINN, STERN and BARNES, JJ.

*Albert C. Hirsch,* with him *Ralph H. Demmler, J.
Randall Thomas* and *Watson & Freeman,* for appellants.

*Robert F. Barnett,* with him *Sterrett, Acheson &
Jones,* for appellee.

OPINION BY MR. JUSTICE BARNES, October 5, 1936:

Plaintiffs brought this action in assumpsit to recover
of the defendant cemetery corporation the purchase
price for a certain tract of land containing 32.358 acres,
situated in the tenth ward of the city of Pittsburgh.
The parties entered into a written agreement dated No-
vember 23, 1935, whereby plaintiffs agreed to sell and
convey, and defendant agreed to purchase this tract of

land adjoining the cemetery for the sum of $16,180.50. A provision in this agreement recited the fact that the "vendee is a cemetery corporation and is specially chartered and has no right to acquire real estate except for cemetery purposes and of a limited area." It further stipulates that the agreement shall be null and void "if the vendee may not validly under its charter or the laws and ordinances of the City of Pittsburgh acquire and without let or hindrance use the above described property for the vendee's corporate purposes."

From the record it appears that the approval by the state and municipal authorities, where such approval is required by any law or ordinance, for the location and use of said land for cemetery purposes, had been duly obtained, and it was admitted that all necessary permits for such occupancy had been granted. Thereupon plaintiffs tendered to defendant a proper deed and demanded the purchase price. The tender and payment were refused by defendant upon the sole ground, as alleged in its answer to the statement of claim, that it lacked the corporate authority to acquire the additional acreage called for by the agreement, and because the land described therein could not be used for cemetery purposes. It alleged, therefore, that the contract with plaintiffs was null and void under the terms of the above quoted provision of the agreement. Although the suit was instituted to enforce the contract of sale and to recover the agreed purchase price, the real issue raised by the pleadings is whether the defendant has the power and authority to acquire and use such additional land for its corporate purposes.

The court below discharged the motion of plaintiffs for judgment for want of a sufficient affidavit of defense, and from the order so entered this appeal has been taken.

The defendant received its charter by a special Act of the General Assembly, approved April 24, 1844, P. L. 375. Its corporate powers, so far as the right to purchase land is concerned, are defined in this original Act

of incorporation and in three subsequent special Acts of Assembly expressly referring to the corporation. These special Acts are of materiality because defendant in the intervening years made no acceptance of the Constitution of Pennsylvania, nor did it adopt the provisions of the Corporation Act of 1874, or those of the Nonprofit Corporation Law of 1933.

The original Act of 1844 empowers the incorporators or managers to purchase "a tract of land in Allegheny County not exceeding in the whole one hundred acres." Pursuant to this authority the defendant corporation acquired a tract of 100.365 acres for its purposes. Then followed a second special Act of April 7, 1849, P. L. 463. By section 4 thereof the right was granted to defendant to buy "an additional number of acres of ground, contiguous to the ground at present enclosed by the cemetery, not exceeding one hundred acres."

By virtue of the right so conferred, several purchases of land were made prior to 1860, resulting in the acquisition of 78.9738 acres additional. While then holding a total of 179.3388 acres, a third special Act of Assembly was passed, the Act of April 11, 1856, P. L. 319, authorizing the defendant to sell a plot of ground which amounted to 4.6016 acres, leaving a remainder held by it at that time of 174.7372 acres. Defendant still possessed authority to purchase additional ground to the extent of 25.2628 acres.

The fourth and last of these special Acts of Assembly, empowering the purchase and sale of lands by the defendant, is the Act of March 6, 1860, P. L. 103. It is due largely to the provisions of this Act that the question has arisen concerning the extent of the authority of defendant to acquire land for its purposes. By this Act the defendant is empowered to make sale of a certain tract of land known as the "Ewalt purchase," and "to re-invest the proceeds thereof in the purchase of other lands adjoining said cemetery; and also to sell, exchange or acquire such further tracts or parcels of

land . . . with the view of bringing the grounds of the said cemetery into a more convenient shape: Provided, That the additional ground so acquired shall not exceed one hundred acres." Under the authority of this Act the Ewalt property, consisting of 8.0854 acres was sold, together with another tract of 1.5312 acres, and the defendant has since purchased a total of 96.0639 acres, so that it finally holds 261.1845 acres, according to its various deeds. By actual survey the property of defendant contains 267.517 acres. In either case, the plaintiffs contend, there would be an authority, not yet exercised, to make the present purchase of approximately 32 acres.

The court below held that the effect of the Act of 1860, supra, was to limit the amount of land which the defendant corporation might *thereafter* purchase to one hundred acres. It finds that the defendant, having already exercised such authority to the extent of 96.0639 acres, is restricted in its capacity to acquire further lands to 3.9361 acres, or if the two tracts sold under the provisions of the Act be first deducted, the power to purchase would be limited to 13.5527 acres. Therefore it adopts the view that the additional land called for by the present agreement of sale would be in excess of the total acreage authorized by the four special Acts mentioned.

With this conclusion reached by the learned court below we cannot agree. At the time of the passage of the Act of 1860, as we have shown, the defendant still had authority under the Act of 1849, supra, to acquire approximately 25 acres of land. There is no repealing clause in the Act of 1860, whereby the authority of the cemetery corporation to acquire the balance of the land authorized under the prior Acts is taken away. The Act did not purport to be an amending statute. If a repeal is to be declared then it can be by implication only. The effect, then, of the decision of the court below is that the Act of 1860 impliedly repeals so much of the previous authorization to acquire land granted by the Act of 1849 as had not then (i. e., March 6, 1860) been exercised by

the defendant. Such result is directly contrary to the well settled principle of statutory construction,—that the repeal of a statute by implication is not favored, and is a conclusion to be reached only where the provisions of two statutes are irreconcilable. The decisions of this Court have many times stated this rule. Mr. Justice MESTREZAT said in *Carpenter v. Hutchison*, 243 Pa. 260, 266: "A presumption to repeal an earlier by a later statute can only arise when the two statutes are irreconcilable, or the intention is clearly expressed. There must be a clear repugnancy between the two statutes to justify the court in declaring that the one repeals the other." See also *Provident Life & Trust Co. v. Klemmer*, 257 Pa. 91; *Com. v. Ruggles*, 280 Pa. 568; *Gilbert v. Lebanon Val. St. Ry. Co.*, 300 Pa. 384; *Snyder's App.*, 302 Pa. 259.

Clearly there is no irreconcilable conflict between the two Acts here in question. In fact, all three statutes, 1844, 1849 and 1860, which conferred authority upon defendant to acquire and hold lands, may stand together without repugnance in their provisions. As we see it, the legislative intent expressed by the Act of 1860 was to add to the power theretofore possessed by defendant to purchase 200 acres, the right to acquire and hold for its corporate purposes an additional 100 acres. In our opinion the special Acts authorizing the purchase of land are capable of harmonious construction. Together they provide for the acquisition by the defendant of 300 acres, and we hold that defendant has the authority, under the several Acts of Assembly cited, to purchase land in such amount as will not increase its holdings beyond that figure. The purchase according to the present agreement of 32.358 acres will increase defendant's actual holdings to 299.875 acres, and is, therefore, within the authority which it possesses.

The conclusion we have reached makes it unnecessary to discuss other contentions of the parties which were ably argued before us. However, there is a further ob-

jection to the sale mentioned in the affidavit of defense, to which we refer. It is that the use of the land is forbidden for cemetery purposes under the provisions of the Act of June 24, 1895, P. L. 244. The Act provides: "That it shall be unlawful to use for the burial of the dead any land the drainage from which passes into any stream furnishing the whole or any portion of the water supply of any city, except beyond the distance of one mile from such city: Provided, however, that the prohibitions of this Act shall not be enforceable against any land now devoted to burial purposes in which there shall have heretofore been burials and sales of burial lots."

We are of opinion that this statute has no application to the situation before us. The land which is the subject of the contract of sale drains into the Allegheny River more than three miles down stream from the pumping station on that river at which a part of the water supply of the City of Pittsburgh is obtained. No part of the water supply of any city is obtained from the Allegheny River below the point of drainage of the lands in question. Obviously the intention of the Legislature in enacting this statute was to prevent contamination of the water supply of cities. Such contamination would not be caused by drainage into a river so far below the point at which the water supply is taken. Under these circumstances this Act does not operate to prevent the use of the land in question for cemetery purposes, and it is not a bar to the proposed purchase by defendant.

The order discharging the rule for judgment is reversed, and the record is remitted to the end that judgment be entered for the plaintiff for such sum as to right and justice may belong unless (Act of April 18, 1874, P. L. 64; *Wood v. Kerkeslager*, 227 Pa. 536, 538; *Mancia v. Marquette Nat. Fire Ins. Co.*, 280 Pa. 174; *Frey v. U. T. Co. of Pittsburgh*, 320 Pa. 196; *Germantown Tr. Co. v. Emhardt*, 321 Pa. 561, 567) other legal or equitable cause be shown to the court below why such judgment should not be so entered.