Philadelphia, to use, *v.* Peter E. Costello & Sons, Inc., Appellant.

Argued November 13, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Michael A. Foley,* for appellant.

*Harry Norman Ball,* for appellee

*Howard E. Stern,* with him *Herman N. Schwartz,* Assistant City Solicitors, and *Frank F. Truscott,* City Solicitor, for Philadelphia under Rule 61.

OPINION BY HIRT, J., January 25, 1945:

Since the Consolidation Act of February 2, 1854, P. L. 21, the City of Philadelphia by ordinance has paved many of its streets at the cost of owners of land fronting on the improvement. Now for the first time in forty-nine years it is contended that the Consolidation Act, insofar as it applies to procedure by ordinance in paving city streets (where as here the property owners have not petitioned for the improvement) was supplanted by the Act of May 22, 1895, P. L. 105. That act as amended April 25, 1903, P. L. 301, 53 PS 651, provides that a copy of the ordinance, for the paving of a city street without petition of property owners, shall be published in official newspapers of the city for a specified period following introduction of the ordinance and before its adoption. Neither the Consolidation Act nor the ordinances under it provide for such notice. For want of such publication of the ordinance which directed the improvement in question in this appeal, appellant seeks to avoid paying for the pavement fronting on its land. It is conceded that the enactment of the ordi-

nance, the award of the contract for the paving, and the assessment of appellant's land, otherwise, were regular. After the improvement was completed a municipal claim of $647.33 was filed against appellant's land, and on scire facias, judgment was entered thereon in favor of appellee Acceptance Corporation to which the contractor had assigned the lien. The question in this appeal is raised by the refusal of the lower court to strike off the judgment.

The Consolidation Act in section 40 provides: "It may be prescribed by ordinance that paving of streets, except at the intersections thereof ...... within the limits of the city, shall be done at the expense of the owners of the ground in front whereof such work shall be done, and liens may be filed by the said city for the same, as is now practiced and allowed by law." On the authority of that act the city on May 3, 1855 adopted an ordinance "to regulate the manner of paving the streets in the City of Philadelphia, and to provide for the payments of the expense thereof" in part as follows: "That the cartways of the public streets and highways of the City of Philadelphia, (except at the intersections thereof) shall be paved at the expense of the owners of the ground fronting thereon, and the repairing of the same shall be done at the expense of the city." Over a period of 89 years the city has proceeded by ordinance in the paving of its streets substantially in the manner and by the procedure followed in making the present improvement and liens have been filed against the abutting land. Notice of paving ordinances, in Philadelphia, has not been given by advertisement, before adoption.

Prior to the Act of 1895 the city's method of paving its streets, and charging abutting property owners with a part of the cost, had sanction and approval in a number of cases. In *City v. Hays*, 93 Pa. 72, it was said: "The Act of February 2, 1854, clothes the city councils with full power to order the paving of streets and footways, and to charge the expense to the owners of the

ground in front of which the work is done ...... It is not, indeed, pretended that any Act of Assembly requires the property owners to be consulted, either as to the character of the work proposed to be done, or as to the contractor who shall execute that work." *City of Philadelphia v. Richards,* 124 Pa. 303, 16 A. 802, thus defines the City's power: "But in regard to paving and to other municipal improvements, the authority of the City of Philadelphia is general and unlimited, both to do the work, and to file claims against property owners for the cost of it; and the restrictions which, in favor of its citizens, the city has put upon its own exercise of its powers, depend upon its ordinances, ......" This discussion was repeated in *Mt. Pleasant Bor. v. Railroad Co.,* 138 Pa. 365, 20 A. 1052, coupled with this statement: "That city [Philadelphia] has a system of its own, complete in itself ......" In *Philadelphia v. Peyton,* 25 Pa. Superior Ct. 350, referring to a lien filed in 1884, we said: "The lien was authorized by the 40th section of the Act of February 2, 1854, P. L. 21, which does not require notice to the owners of property to be charged under its provisions." This is still the law in Philadelphia.

We are not called upon to decide whether Philadelphia may proceed under the Act of 1895 in paving its streets. If so, that Act provides no more than an alternate method and does not supplant the procedure followed by the city under ordinances enacted on the authority of the Consolidation Act. The 1895 act is not mandatory in the sense of supplying a uniform and exclusive system applicable to all cities. As its title indicates, it is "An Act *empowering* cities of this Commonwealth" to pave its streets at the expense of benefited property holders without their consent. (Emphasis added.) The procedure designated becomes obligatory only when a city assumes exercise of the power under that Act. In *Greenfield Avenue, Pittsburgh's*

*Appeal,* 191 Pa. 290, 43 A. 225, construing this legislation, the Supreme Court refused to say that the "act 'empowering cities,' etc., and making the affirmative grant that 'all cities shall have the power,' etc., was meant only to put restrictions on powers already existing." The opinion in that case recognized "the long settled policy of the state that certain developments and improvements in the growth and extension of cities shall be paid for, in part at least, by the parties who are specially benefited thereby", and held that "The plain purpose of the act of 1895 was to enlarge the occasions on which the power might be exercised" and, by implication, not in any wise to limit them. The Act as applied in that case gave the City of Pittsburgh powers which it had unsuccessfully sought to obtain by prior legislation, held unconstitutional in *Wyoming St., Pittsburgh,* 137 Pa. 494, 21 A. 74. The conclusion here is inevitable that the intent of the legislature in the 1895 Act was to supply the needful power of assessment, (with certain added procedural requirements) for the benefit of all cities of the Commonwealth which did not then possess it. The Act was not essential to nor was it intended to apply to Philadelphia which already had the power without limitation or restriction under the Act of 1854.

The conclusion that the Act of 1895 was intended merely to extend powers of cities generally, and not to supplant the Act which had given Philadelphia the same kind of authority, is fortified by the fact that there is no clause in the 1895 Act repealing any part of the Consolidation Act either specifically or by implication. Repeals by implication are not favored and will not be indulged in unless it is manifest that the legislature so intended. *Harr, Sec. of Bkg. v. Boucher et al.,* 142 Pa. Superior Ct. 114, 15 A. 2d 699. And more to the point: "Ordinarily a local or special act is not repealed by implication, as the authorities show, by a subsequent general statute containing inconsistent provisions on the same subject unless there is a clearly manifested

legislative intent, disclosed by the general act, to repeal the local act": In re *Opening of Parkway,* 249 Pa. 367, 94 A. 1074. The two statutes here are not irreconcilable (Cf. *Com. Tr. Co. et al. v. Alleg'y Cemetery,* 324 Pa. 78, 187 A. 506) and the only inconsistency relates to one step in the procedure. There is nothing repugnant in the existence of two methods of initiating an improvement (*Hanover Borough's Appeal,* 150 Pa. 202, 24 A. 669) or in different procedures in arriving at the assessment of land benefited by the improvement. By stating the procedure to be observed by other cities under the Act of 1895, the legislature clearly did not intend to disturb the long established practice in Philadelphia.

Order affirmed at appellant's costs.