370 A.2d 702

**COMMONWEALTH of Pennsylvania, DEPART-
MENT OF EDUCATION, Appellant,**

v.

**The FIRST SCHOOL.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1976.

Decided Feb. 28, 1977.

472

J. Justin Blewitt, Jr., Deputy Atty. Gen., Harrisburg, for appellant.

William B. Ball, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal[1] from a decision of the Commonwealth Court which held that the Nonpublic Elementary and Secondary Education Act ("Act 109")[2] is constitutional and enforceable as applied to nonsectarian nonpublic schools.[3]  Appellant, the Commonwealth Department of Education ("Department"), contends that Act 109 was declared unconstitutional in its entirety in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), and thus cannot be enforced even as to nonsectarian schools.  The Department also argues that even if

1. This Court has jurisdiction to hear this appeal pursuant to The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, No. 223, § 204, 17 P.S. § 211.204 (Supp.1976).

2. Act of June 19, 1968, P.L. 232, §§ 1 et seq., 24 P.S. §§ 5601 et seq. (Supp.1976).

3. *Commonwealth of Pennsylvania, Department of Education v. First School,* 22 Pa.Cmwlth.Ct. 334, 348 A.2d 458 (1975) (5–2 decision).

Act 109 was not held unconstitutional in its entirety, its provisions are not severable. The Department further asserts that Act 109 has been impliedly repealed by subsequent legislation. Finally, the Department maintains that Act 109, as construed by the Commonwealth Court, cannot be constitutionally administered.

We reject the Department's contentions. We hold that Act 109 is constitutional and enforceable as applied to nonsectarian nonpublic schools and accordingly affirm the Commonwealth Court order.

On July 25, 1974, appellee, the First School, a nonsectarian nonpublic school, filed "An Application for Nonpublic School Aid" pursuant to Act 109. The Department denied the First School's application because it considered Act 109 to be invalid in its entirety in light of *Lemon v. Kurtzman, supra.* After the Secretary of Education affirmed the Department's denial of aid, the First School appealed to the Commonwealth Court, which held that Act 109 was valid as applied to nonsectarian nonpublic schools and ordered the Department to process the First School's application.

I

The Department contends that the United States Supreme Court held Act 109 unconstitutional in its entirety in *Lemon v. Kurtzman, supra.*[4] To evaluate this

4. The Department also asserts that a three-judge court would not have been convened in *Lemon v. Kurtzman,* supra, if Act 109 had been challenged only in its application to sectarian nonpublic schools. We cannot agree. A three-judge court is required when it is claimed that a statute is unconstitutional as applied, even though it is conceded that the statute in general is valid. C. Wright, Federal Courts 190 (2d ed. 1970). See *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L. Ed.2d 414 (1966); *Query v. United States,* 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942); *Ex parte Bransford,* 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); *Stratton v. St. Louis Southwestern Railroad Co.,* 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135 (1930). Thus, the Department cannot rely on the fact that a three-judge

contention, it is first necessary to review the procedural history of *Lemon*. Plaintiffs brought suit in federal district court to enjoin the allegedly unconstitutional approval and expenditure of public funds to sectarian nonpublic schools under Act 109. The three-judge district court[5] held that Act 109 violated neither the establishment nor free exercise clauses of the first amendment and granted a motion to dismiss the complaint. *Lemon v. Kurtzman*, 310 F.Supp. 35 (E.D.Pa.1969). On appeal, the United States Supreme Court held that Act 109, which authorizes direct reimbursement to sectarian and nonsectarian nonpublic schools for actual expenditures for teachers' salaries, textbooks and instructional materials, fostered excessive entanglement between government and religion in violation of the establishment clause of the first amendment. *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (*Lemon* I). The Court reversed the district court order dismissing the complaint, and remanded the case for further proceedings consistent with its opinion.

On remand, the district court entered summary judgment for plaintiffs and restrained payments to *sectarian* nonpublic schools for services performed or costs incurred subsequent to June 28, 1971, the date *Lemon* I was filed. The district court, however, upheld payments to sectarian nonpublic schools for services performed or costs incurred prior to June 28, 1971.[6] The United

court was convened to argue that Act 109 was held unconstitutional on its face, and not as applied to sectarian nonpublic schools.

5. A three-judge district court was convened because the complaint alleged the unconstitutionality of a state statute of statewide application, 28 U.S.C.A. §§ 2281–2284 (1965).

6. The central issue on remand was whether *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (*Lemon* I) should be applied prospectively to allow reimbursement to sectarian nonpublic schools for actual expenditures prior to the United States Supreme Court's determination that Act 109 was unconstitutional.

States Supreme Court affirmed this order in *Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (*Lemon* II).

A careful analysis of *Lemon* I reveals that the Supreme Court found Act 109 unconstitutional because it fostered an excessive entanglement between government and religion in violation of the establishment clause of the first amendment. Specifically, the Court held that the constitutional infirmity arose from (1) the restriction and surveillance necessary to ensure that teachers in sectarian nonpublic schools play a strictly nonideological role;[7] (2) the state supervision of sectarian nonpublic school accounting procedures required to distinguish secular from religious education;[8] and (3) the continuous financial aid given directly to sectarian nonpublic schools for teachers' salaries, textbooks and instructional materials.[9] Additionally, the Court cited the danger of entanglement which could result from the diversive political potential of Act 109, noting that "political division along religious lines was one of the principal evils against which the First Amendment was intended to protect." [10]

The constitutional infirmities of Act 109 stem from the entanglement between the state and sectarian nonpublic schools. The Supreme Court did not address itself to the validity of Act 109 as applied to nonsectarian nonpublic schools in *Lemon* I. It is clear that the constitutional principles which proscribe public aid as authorized under Act 109 to sectarian nonpublic schools have no bearing on public aid to nonsectarian nonpublic schools.

Moreover, the district court order, which was affirmed by the Supreme Court in *Lemon* II, only enjoined reim-

---

7. *Lemon v. Kurtzman*, supra at 620–21, 91 S.Ct. at 2115.

8. Id.

9. Id.

10. Id. at 622, 91 S.Ct. at 2116, citing Freund, Public Aid to Parochial Schools, 82 Harv.L.Rev. 1680, 1692 (1969).

bursements to sectarian nonpublic schools. The court order prohibited payments

". . . to any school which is church related, controlled by a religious organization or organizations, or has the purpose of propagating and promoting a particular religious faith and conducts its operations to fulfill that purpose."

*Lemon v. Kurtzman,* 348 F.Supp. 300, 300 n. 1 (E.D.Pa. 1972). If, as the Department contends, the entire Act was held unconstitutional, the district court would have proscribed payments to both sectarian and nonsectarian schools.

■■■ We conclude that the Supreme Court held Act 109 unconstitutional only as applied to sectarian nonpublic schools.[11] Thus, the validity of Act 109 as applied to nonsectarian nonpublic schools was not resolved by *Lemon* I or *Lemon* II.

## II

■ The Department contends that Act 109 is not severable because it cannot achieve its legislative purpose if applied only to nonsectarian nonpublic schools. We do not agree and hold that Act 109 is severable and can be completely effectuated as applied to nonsectarian nonpublic schools.

11. A statute may be invalid as applied to a certain class and still be generally valid:
   "A statute may be found invalid in some of its parts but valid in others, see *Dorchy v. State of Kansas,* 264 U.S. 286, 289–290, 44 S.Ct. 323, 324, 68 L.Ed. 686 [1924], . . . it may be valid under one state of facts but not another, see *Kansas City Southern R. Co. v. Anderson,* 233 U.S. 325, 229–330, 34 S.Ct. 599, 600, 58 L.Ed. 983 [1914], it may be valid as to one class of persons and invalid as to others, see *People of State of New York ex rel. Hatch v. Reardon,* 204 U.S. 152, 160–61, 27 S.Ct. 188, 190, 51 L.Ed. 415 [1907]."
   *Staub v. City of Baxley,* 355 U.S. 313, 330, 78 S.Ct. 277, 287, 2 L. Ed.2d 302 (1958) (dissenting opinion of Frankfurter, J., joined by Clark, J.).

The public policy of this Commonwealth favors severability. Section 1925 of the Statutory Construction Act[12] provides:

"The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statutes are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

1 Pa.C.S.A. § 1925 (Supp.1976).

We set out the principles to be followed in determining whether a statute is capable of a severable construction in *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 320, 196 A.2d 664, 666 (1964):

"[A] statute or ordinance may be partially valid and partially invalid, and . . . if the provisions are distinct and not so interwoven as to be inseparable . . . courts should sustain the valid portions." (citations omitted)

Applying these principles, we find that the application of Act 109 to nonsectarian nonpublic schools is not "so essentially and inseparably connected" with the application of Act 109 to sectarian nonpublic schools that it "cannot be presumed [that] the [Legislature] would

12.   1 Pa.C.S.A. §§ 1501 et seq. (Supp.1976).

have enacted" Act 109 solely as applied to nonsectarian schools. As the Commonwealth Court noted, Act 109 is

". . . readily capable of being administered along a sectarian-nonsectarian dichotomy. . . . Severance of sectarian schools from the application of Act 109, therefore, could still allow the Act to remain complete and fully capable of execution as to nonsectarian schools."[13]

Nor do we find that Act 109, as applied to nonsectarian nonpublic schools, is "incomplete" or "incapable of being executed in accordance with the legislative intent." [14]

Our conclusion that Act 109 is severable is buttressed by the inclusion of a severability clause in the Act itself. Section 5608 provides:

"If part of this act is invalid, all valid parts that are severable from the invalid part remain in effect. If a part of this act is invalid in *one or more of its applications, the part remains in effect in all valid applications that are severable from the invalid applications.*" (emphasis added)[15]

Clearly the Legislature envisioned the possibility that Act 109 would be partially invalidated, and indicated its intent that remaining valid applications be given effect.[16]

13. *Commonwealth of Pennsylvania, Department of Education v. First School*, 22 Pa.Cmwlth. at 338–39, 348 A.2d at 461.

14. A complete statutory mechanism exists to apply Act 109 to nonsectarian nonpublic schools; the enforcement provisions were not invalidated in *Lemon v. Kurtzman*, supra.

15. 24 P.S. § 5608 (Supp.1976).

16. "Whether or not one part of a statute can survive the excision of another part which has been held invalid is a question of statutory construction, and in determining it the court searches for the intention of the legislature. In the present instance the legislature has *expressed* its intention [by including a severability clause] . . . . While such an expression of legislative intent is not always conclusive, ordinarily it is but little short of a mandate."
*Rieck-McJunkin Dairy Co. v. Milk Control Commission*, 341 Pa. 153, 162, 18 A.2d 868, 871–72 (1941). (emphasis in original)

Our case law establishes that there is a presumption in favor of severability where a statute contains a severability clause.

"[W]herever part of an act found to be unconstitutional can be severed from the rest of the statute without destroying its entirety of thought, a saving [severability] clause . . . creates a presumption that the Legislature would have passed the act notwithstanding its unconstitutional parts . . . ."[17]

The provisions of Act 109 relating to sectarian nonpublic schools are not so essentially and inseparably connected to those relating to nonsectarian schools as to prevent a severable construction of Act 109. Therefore, the severability clause of Act 109 provides sufficient indication that the Legislature intended that Act 109 be construed to be valid and enforceable as applied to nonsectarian nonpublic schools even though it cannot be constitutionally applied to sectarian nonpublic schools.

The Department relies on *Sloan v. Lemon,* 413 U.S. 825, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973), and *Meek v. Pittenger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), to argue that the Legislature would not have enacted Act 109 solely to benefit nonsectarian nonpublic schools. In *Sloan,* the United States Supreme Court held that Pennsylvania's Parent Reimbursement Act for Nonpublic Education,[18] which authorized funds to reimburse parents for a portion of tuition expenses incurred in sending their children to nonpublic schools, was not severable. In *Meek,* the Court held that Pennsylvania's Act 194,[19] which authorized the state to provide auxiliary services to nonpublic schoolchildren, and Act 195,[20]

17. *N. R. Bagley Co. v. Cameron,* 282 Pa. 84, 89, 127 A. 311, 312 (1925).

18. Act of August 27, 1971, P.L. 358, No. 92, §§ 2 et seq., 24 P.S. § 5701 et seq. (Supp.1976).

19. Act of July 12, 1972, P.L. 861 (repealed by Act of August 1, 1975, P.L. 180).

20. Act of July 12, 1972, P.L. 863, § 1, 24 P.S. § 9-973 (Supp.1976).

which provided for the loan of instructional materials, equipment and textbooks to nonpublic schools, could not be effectuated solely as applied to nonsectarian nonpublic schools.

■■ Although the United States Supreme Court determined that the Legislature would not have passed the Parent Reimbursement Act or Acts 194 and 195 to aid only those attending nonsectarian nonpublic schools, this Court is not bound by that determination in deciding whether Act 109 is severable. The question whether a state statute is capable of a severable construction is a question of state law, and the United States Supreme Court is bound by our determination on the question of the severability of a state statute.[21] Since *Sloan* and *Meek* arose in federal district court, the United States Supreme Court had no guidance from this Court on the severability of the Parent Reimbursement Act or Acts 194 and 195.

We are not persuaded that the Legislature would not have enacted Act 109 as applied only to nonsectarian nonpublic schools. Act 109 was passed to enhance the quality of secular education in nonpublic schools. Section 5602(3) provides:

"[T]he elementary and secondary education of children is today recognized as a public welfare purpose; . . . nonpublic education through providing instruction in secular subjects, makes an important contribution to the achieving of such public welfare purpose; . . . the governmental duty to support the achieving of public welfare purposes in education may be in part fulfilled through government's support of

21. *Eisenstadt v. Baird,* 405 U.S. 438, 442, 92 S.Ct. 1029, 1032, 31 L.Ed.2d 349, 355 (1972); *Sioux County v. National Surety Co.,* 276 U.S. 238, 48 S.Ct. 239, 72 L.Ed. 547 (1928); *Dorchy v. Kansas,* 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924). See also Comment, Separability Clauses in the Supreme Court, 51 Harv.L.Rev. 76, 92 (1937).

those purely secular educational objectives achieved through nonpublic education." [22]

We find this legislative purpose effectuated by the application of the Act to nonsectarian nonpublic schools.[23]

In short, in light of the general policy favoring severability, the severability clause of Act 109, and the effectuation of the legislative purpose of Act 109 by its application to nonsectarian nonpublic schools, we hold that Act 109 is severable.

## III

The Department contends that Act 109 has been impliedly repealed by subsequent legislation. An examination, of subsequent legislation does not support the Department's contentions. We hold that Act 109 has not been repealed by subsequent legislation.

A statute may be repealed by the Legislature either expressly or by implication.[24] Since Act 109 has

22. 24 P.S. § 5602(3) (Supp.1976).

23. The Department contends that in order to uphold Act 109 as applied to nonsectarian nonpublic schools, this Court would have to engage in "judicial legislation" by drafting words onto Act 109 because the Act makes no distinction between sectarian and nonsectarian nonpublic schools. We do not agree. The statutory provisions are capable of being applied to nonsectarian schools without any need for redrafting Act 109. Act 109 is clearly distinguishable from those situations where the statutory schemes were insufficient to stand alone because particular provisions were invalidated, and we therefore refused to give them a severable construction. See e. g., *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania*, 441 Pa. 293, 272 A.2d 478 (1971). Act 109 was held unconstitutional only as applied to sectarian schools, and all its provisions remain in effect and can be applied to nonsectarian schools.

24. *Newton Estate*, 354 Pa. 146, 148–49, 47 A.2d 229, 230 (1946). "'An implied repeal is one which takes place when a new law contains provisions which are contrary to but do not expressly repeal, those of a former law': *Kingston Borough v. Kalanosky et al.*, 155 Pa.Super. 424, 427, 38 A.2d 393, 394 [(1944)]. It is a question of legislative intent, but since repeals by implication are not favored in law, the intent must be clear: *Commonwealth v. Provident Trust Co.*, 287 Pa. 251, 134 A. 377 [1926]; *Commonwealth v. Meyers*, 290 Pa. 573, 139 A. 374 [1927]; *Gil-*

not been expressly repealed, we must consider the rules of statutory construction applicable to repeals by implication. Repeals by implication " . . . are not favored and will not be implied unless there be an irreconcilable conflict between statutes embracing the same subject matter."[25] Section 1971 of the Statutory Construction Act provides in pertinent part:

"(a) Whenever a statute purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute, such statute shall be construed to supply and therefore to repeal all former statutes upon the same subject."

1 Pa.C.S.A. § 1971(a) (Supp.1976).

The Department argues that these requirements have been met: statutes enacted after Act 109 have "set up a general . . . system covering the entire subject matter" of the Act and were "intended as a substitute" for it.[26] Since Act 109 was passed, the Legislature has

bert v. Lebanon Valley St. Ry., 300 Pa. 384, 150 A. 638 [1930]; Commonwealth Trust Co. v. Allegheny Cemetery, 324 Pa. 78, 187 A. 506 [1936]."

**25.** George v. Moore, 394 Pa. 419, 421, 147 A.2d 148, 149 (1959). In Parisi v. Philadelphia Zoning Board of Adjustment, 393 Pa. 458, 463, 143 A.2d 360, 363 (1958), this Court stated:
"There may, indeed, be an implied repeal of a legislative enactment. But it can arise only where the language used in the later statute necessarily discloses an irreconcilable repugnancy between its provisions and those of the earlier statute so inconsistent as not to admit of any fair consonant construction of the two."
See also Pennsylvania Turnpike Commission v. Sanders & Thomas, 461 Pa. 420, 336 A.2d 609 (1975); Jenner Twp. Annexation Case, 208 Pa.Super. 62, 220 A.2d 385, aff'd, 423 Pa. 609, 225 A.2d 247 (1966); Kelly v. Philadelphia, 382 Pa. 459, 115 A.2d 238 (1955); H. C. Frick Coke Company Appeal, 352 Pa. 269, 42 A.2d 532 (1945); Scott v. Bell, 344 Pa. 243, 25 A.2d 308 (1942).

**26.** Statutes may also be impliedly repealed where (1) a subsequent statute purports to be a revision of all statutes on a particular subject and it is intended that it be a substitute for the former statute, 1 Pa.C.S.A. § 1971(a); (2) a subsequent general

enacted the Parent Reimbursement Act for Nonpublic Education,[27] Act 194,[28] Act 195,[29] Act 89,[30] and Act 90.[31] The United States Supreme Court found the Parent Reimbursement Act for Nonpublic Education unconstitutional in *Sloan v. Lemon,* 413 U.S. 825, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973).[32] In *Meek v. Pittenger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975),[33] the Court held that Act 194 and all but the textbook provisions of Act 195 were unconstitutional.

statute purports to establish a uniform and mandatory system governing a class of subjects, 1 Pa.C.S.A. § 1971(b); and (3) the two statutes are irreconcilable, 1 Pa.C.S.A. § 1971(c). The Department does not contend, and we do not find, that Act 109 has been impliedly repealed by any of the other methods enumerated above.

27. Act of August 27, 1971, P.L. 358, No. 92, §§ 2 et seq., 24 P.S. § 5701 et seq. (Supp.1976).

28. Act of July 12, 1972, P.L. 861 (repealed by Act of August 1, 1975, P.L. 180).

29. Act of July 12, 1972, P.L. 863, § 1, 24 P.S. § 9–973 (Supp.1976).

30. Act of August 1, 1975, P.L. 180, § 2, 24 P.S. § 9–972.1 (Supp. 1976).

31. Act of August 1, 1975, P.L. 183, § 1, 24 P.S. § 9–973 (Supp. 1976).

32. In *Sloan v. Lemon,* 413 U.S. 825, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973), the United States Supreme Court held that the Parent Reimbursement Act, which provided funds to reimburse parents for a portion of tuition expenses incurred in sending their children to nonpublic schools, had the impermissible effect of advancing religion and was therefore unconstitutional under the establishment clause of the first amendment.

33. In *Meek v. Pittenger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), the Court held that Act 194, which authorized the state to provide auxiliary services to nonpublic schoolchildren, was unconstitutional because it would require excessive entanglement between government and religion to assure that the public school professional staff members who provide services do not advance the religious mission of the sectarian nonpublic schools in which they serve.

The Court held that Act 195, insofar as it provides for the direct loan of instructional materials and equipment to nonpublic schools has the unconstitutional effect of establishing religion. The Court, however, upheld the provisions of Act 195 authorizing the loan to nonpublic schools of textbooks acceptable in public schools, finding that the textbooks benefited parents and children rather than sectarian nonpublic schools.

■ We need only consider whether those acts which have not been held unconstitutional have impliedly repealed Act 109.

"Where a subsequent statute which would, if valid, act as a repeal of a prior statute only by implication . . . is itself unconstitutional it . . . [is] obvious that the earlier act remains in full force and effect. . . . Never having come into existence, it could have no effect." [34]

Acts 89 and 90 and the textbook provisions of Act 195 have not been invalidated, and we must first consider whether they establish "a general . . . system covering the entire subject matter" of Act 109. Act 89 provides for auxiliary services to nonpublic schoolchildren,[35] and it cannot be contended that this either duplicates or substitutes for the aid provided to nonpublic schools in Act 109. Acts 195 and 90 authorize the loan of textbooks and instructional materials to sectarian and nonsectarian nonpublic schools.[36] Act 109 authorizes direct

**34.** *Mazurek v. Farmers' Mutual Fire Ins. Co.*, 320 Pa. 33, 37, 181 A. 570, 572 (1935). "The rule that an unconstitutional enactment will not by mere implication repeal a pre-existent valid law is well-established. *Frost v. Corporation Commission*, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 [1929]; *People v. Mensching*, 187 N.Y. 8, 79 N.E. 884, 10 L.R.A.(N.S.) 625, 10 Ann.Cas. 101 [1907], and cases there cited." Id. at 37, 181 A. at 572.

**35.** "Students attending nonpublic school shall be furnished a program of auxiliary services which are provided to public school students in the school district in which their nonpublic school is located."
24 P.S. § 9–972.1(c) (Supp.1976).
"Auxiliary services" include
"guidance, counseling and testing services; psychological services, services for exceptional children; remedial services; speech and hearing services; services for the improvement of the educationally disadvantaged . . . ."
Id. § 9–972.1(b).

**36.** "The Secretary of Education . . . shall have the power and duty to purchase textbooks and instructional materials and, upon individual request, to loan them to all children residing in the Commonwealth who are enrolled in grades kindergarten through twelve of nonpublic schools."
24 P.S. § 9–973(c) (Supp.1976).

reimbursements to nonpublic schools for actual expenditures for teachers' salaries, textbooks and instructional materials.[37]

The Department asserts that Acts 195 and 90 duplicate Act 109 because they provide for the loan of textbooks and instructional materials which could be purchased under Act 109. The Department contends that this in itself demonstrates that Acts 195 and 90 were intended to replace Act 109, because the Legislature could not have intended to grant double benefits to nonsectarian nonpublic schools.

The Department fails to recognize that Acts 195 and 90 must cover the "entire subject matter" of Act 109 in order to repeal it by implication. Acts 195 and 90 merely provide alternative means of acquiring textbooks and instructional materials. Act 109 authorizes direct reimbursement for actual expenditures for textbooks and instructional materials. Acts 195 and 90 provide for the loan of similar materials. Neither act, however, requires the Commonwealth to provide aid in the form of actual

37. Section 5604 provides:
"There is hereby created for the special purpose of this act a Nonpublic Elementary and Secondary Education Fund dedicated to the particular use of purchasing secular educational service consisting of courses solely in the following subjects: mathematics, modern foreign languages, physical science, and physical education, Provided, however, That as a condition for payment by the Secretary of Education for secular educational service rendered hereunder, the Secretary of Education shall establish that (i) solely textbooks and other instructional materials approved by the Secretary of Education shall have been employed in the instruction rendered; (ii) a satisfactory level of pupil performance in standardized tests approved by the Secretary of Education, shall have been attained; (iii) after five years following the effective date of this act, the secular educational service for which reimbursement is sought was rendered by teachers holding certification approved by the Department of Education as equal to the standards of this Commonwealth for teachers in the public schools: Provided, however, That any such service rendered by a teacher who, at the effective date of this act, was a full time teacher in a nonpublic school, shall be deemed to meet this condition."
24 P.S. § 5604 (Supp.1976).

reimbursement *and* loans. Thus, the Department will not be required to grant double benefits because we sustain the validity of Act 109 as applied to nonsectarian nonpublic schools. Moreover, Acts 195 and 90, unlike Act 109, make no provision for reimbursement for teachers' salaries.

We conclude that Acts 195, 90 and 89 do not establish "a general . . . system covering the entire subject matter" of Act 109. We are persuaded by the reasoning of the Commonwealth Court:

> "Although these Acts may involve some duplication of coverage, they are not mutually exclusive or irreconcilable, and they would appear only to be an additional effort by the General Assembly to provide increased public aid to nonpublic education." [38]

We hold that Act 109 has not been repealed by subsequent legislation.

## IV

Finally the Department contends that Act 109 cannot be constitutionally administered if it is enforced only as to nonsectarian nonpublic schools. The Department suggests that the determination whether a nonpublic school is sectarian or nonsectarian may itself violate the establishment clause of the first amendment.

Only nonsectarian nonpublic schools are entitled to reimbursement pursuant to Act 109. It is therefore necessary for the Department to distinguish between sectarian and nonsectarian schools. It does not follow, however, that this determination violates the federal Constitution.

The test for determining whether a statute can withstand the strictures of the establishment clause was articulated in *Lemon* I, supra.

---

**38.** *Commonwealth of Pennsylvania, Department of Education v. First School,* 22 Pa.Cmwlth. at 340, 348 A.2d at 462.

"First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . finally, the statute must not foster 'an excessive entanglement with religion.' "

Id. at 612–13, 91 S.Ct. at 2111, quoting *Walz v. Tax Commission*, 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed. 2d 697, 704 (1970).

The Department does not contend that Act 109, as applied to nonsectarian nonpublic schools, does not have a valid secular legislative purpose. In *Lemon* I, the Supreme Court held that Act 109, which is intended to enhance the quality of secular education in all schools covered by compulsory attendance laws, has a valid secular legislative purpose. Nor does the Department assert that Act 109 has the primary or principal effect of advancing or inhibiting religion. The Department, suggests, however, that Act 109, as construed by the Commonwealth Court, would foster an excessive entanglement between government and religion.

In *Lemon* I, the Court enunciated the criteria for determining whether government entanglement with religion is excessive.

"[W]e must examine the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority."

403 U.S. at 615, 91 S.Ct. at 2112.

The first two criteria are irrelevant here because the institutions being benefited are nonsectarian. Therefore, we must only consider whether the "relationship between government and the religious authority" which results from the determination whether a nonpublic school is sectarian or nonsectarian is one that fosters an excessive entanglement.

We hold that there is no excessive entanglement when the Department determines whether a school is sectarian or nonsectarian. The Supreme Court has warned against programs which are apt to entangle the state in detailed administration of religious institutions.[39] The Court has also cited the danger of entanglement where the program requires an extensive and continuous relationship between the state and sectarian institutions.[40] However, the determination whether a school is sectarian or nonsectarian does not require an extensive ongoing relationship between government and religion. The inquiry involves no more entanglement than the determination of tax exempt status, which has been upheld under the establishment clause. *Walz v. Tax Commission of New York*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). To hold that this limited inquiry constitutes excessive entanglement between government and religion would require invalidation of any legislative scheme distinguishing between sectarian and nonsectarian institutions.

The Constitution does not require such a drastic and impractical result. The Supreme Court has recognized: "Our prior holdings do not call for total separation between church and state; total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable." [41]

Any relationship between the state and religious institutions which may be created by the necessity of determining whether a nonpublic school is entitled to aid pursuant to Act 109 is minimal and is clearly permissible under the first amendment.

**39.** See i. g., *Lemon* I, supra; *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).

**40.** *Walz v. Tax Commission*, supra.

**41.** *Lemon* I, 403 U.S. at 614, 91 S.Ct. at 2112.

490

## V

We hold that Act 109 is constitutional and enforceable as applied to nonsectarian nonpublic schools and affirm the order of the Commonwealth Court.

Order affirmed.

EAGEN, J., dissents.