LeRoy S. Zimmerman, in his official capacity as Attorney General of the Commonwealth of Pennsylvania, Petitioner *v.* Helen B. O'Bannon, in her official capacity as Secretary of the Department of Public Welfare, Respondent.

482

Argued September 16, 1982, before Judges Rogers, MacPhail and Doyle, sitting as a panel of three.

*Joel M. Ressler,* Deputy Attorney General, with him *LeRoy S. Zimmerman,* Attorney General, for petitioner.

*Jonathan Vipond, III,* Chief Counsel, with him *Howard Ulan,* Assistant Counsel, for Department of Public Welfare, *Jay C. Waldman,* General Counsel, Governor's Office, and *James R. Farley,* Administrative Deputy General Counsel, Office of General Counsel, for respondent.

OPINION BY JUDGE ROGERS, December 22, 1982:

By Petition for Review filed pursuant to Section 204(b) of the Commonwealth Attorney's Act,[1] the Attorney General here challenges a regulatory provision of the Department of Public Welfare (Department) found at 11 Pa. Bull. page 3000 by which the licensure renewal term applicable to personal care boarding homes was increased from one to two years. The Attorney General asserts that this regulation must fall because it is inconsistent with a number of provisions of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, No. 21, 62 P.S. §101-1503 and especially with Section 1009 of the Code, entitled "Term and content of license," which requires with respect to the facilities here at issue that "All licenses issued by the department under this act shall expire one year following the day on which issued. . . ."

The Department argues in defense of its regulation that Section 1009 has been implicitly repealed by Section 211(L) of the Code, added by the Act of July 10, 1980, P.L. 493, No. 105, 62 P.S. §211(L) (Supp. 1982-1983), which provides:

(L) After initial approval, personal care boarding homes need not be visited or inspected annually; provided that the department shall schedule inspections in accordance with a plan that provides for coverage of at least seventy-

---

[1] Act of October 15, 1980, P.L. 950, No. 164, §101, 71 P.S. §732-101 *et seq.*

five percent of the licensed personal care boarding homes every two years and all homes shall be inspected at least once every three years.

As the final premise of its syllogism, the Department contends that the license term may not be less than the required interval between inspections because Section 1007 of the Code, 62 P.S. §1007, provides that the Department may issue a license only in those instances where "after *investigation*" (emphasis added) it is satisfied that the requirements of the Code and applicable regulations are met. In sum, the Department argues that Section 1009, requiring annual license renewal, is irreconcilable with Section 211, permitting some facilities to be inspected as infrequently as once in three years, read in conjunction with Section 1007, requiring each license renewal to be predicated on a departmental investigation, and therefore, since Section 211 is the most recent statement of the legislative will, it must prevail. *See* Sections 1934 and 1971(c) of the Statutory Construction Act, 1 Pa. C. S. §§1934, 1971(c).

The Attorney General responds that the provisions of the Code described above are not irreconcilable and that the requirement of Section 1009 that the term of each license be one year has not been implicitly repealed.[2] In our judgment the construction of the Attorney General is correct.

---

[2] The Attorney General also asserts, with some force, that the Department's argument proves too much since any inconsistency in the Code created by Act 105 of 1980 relates to the combination of Sections 1009 and 1007 and not to Section 1009 alone; and that the Department has proved too little since, if it is correct in its contention, the term of licensure may not be less than the interval between inspections—a correspondence not accomplished by the regulations at issue which provide for biannual licensing although inspections with respect to as many as twenty-five percent of these facilities are required only every three years.

As the Department concedes, the annual licensure requirement of Section 1009 of the Code is irreconcilable with the recent changes made by Act 105 of 1980 only if the "inspections" no longer required to be performed on a yearly basis and the "investigations" required to be performed before the reissuance of licenses denote the same departmental activity. In support of this equation, the Department points to a definitional entry contained in the fifth edition of Black's Law Dictionary as well as judicial constructions of the two terms at issue as they appear in Section 7605(b) of the United States Internal Revenue Code of 1954, 26 U.S.C. §7605(b).

These authorities are unpersuasive in the context of this case. Here the issue is not, as the Department would have it, whether "inspections" and "investigation" are commonly or even usually employed without differentiation. Instead the issue before us is whether the provisions set forth above clearly disclose an irreconcilable repugnancy "so inconsistent as not to admit of any far consonant construction. . . ." Parisi v. Philadelphia Zoning Board of Adjustment, 393 Pa. 458, 463, 143 A.2d 360, 363 (1958). This is because implied statutory repealers are strongly disfavored and because we must presume that the legislature intended the whole of the Code to be effective following its recent additions. Commonwealth Department of Education v. First School, 471 Pa. 471, 370 A.2d 702 (1977); Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc., 461 Pa. 420, 336 A.2d 609 (1975); Parisi v. Philadelphia Zoning Board of Adjustment. See Section 1922(2) of the Statutory Construction Act, 1 Pa. C. S. §1922(2). With respect to this more appropriate formulation of the question presented the Department offers neither authority nor argument why, in the case of the reissuance of a li-

cense, the investigation required by Section 1007 might not fairly be construed to include examination of the application for reissuance, a review of previous applications, licenses, reports, and complaints related to the same facility or to its present proprietors or managers, as well as such verification of this information as appeared to be required—but not to include, necessarily, the onsite inspection now to be performed, after initial licensure, only every two or three years.

Finally, we must note the obvious: that licensure serves a variety of useful purposes, among which are the updating of records as to the identity, number, and location of facilities still in operation, the number of their patrons, the registering of changes in ownership and management, as to which an on-site inspection is unnecessary. Here, we believe, the legislature has, in the clearest possible language, mandated that the functions to be served by licensure be performed annually.

Accordingly, we enter the following

ORDER

AND Now, this 22nd day of December, 1982 the Order of the Department of Public Welfare promulgating Section 2-30-35 of the Personal Care Boarding Home Plan and accompanying regulations, published August 29, 1981, is reversed insofar as it provides for other than annual licensure of boarding homes. In all other respects, the Order is affirmed.

---

DISSENTING OPINION BY JUDGE DOYLE:

After a careful review of the pertinent statutes and controlling regulations herein, I believe we should reject the Attorney General's challenge to the De-

partment's Plan and regulations and I therefore dissent from the position taken by the majority.

Section 1007 of the Code, 62 P.S. §1007 reads:

### Issuance of License

When, after investigation the department is satisfied that the application or applicants for a license are responsible persons, *that the place to be used as a facility is suitable for the purpose, is appropriately equipped* and that the applicant or applicants and *the place to be used as a facility meet all the requirements of this act and of the applicable statutes, ordinances and regulations*, it shall issue a license and keep a record thereof and of the application. (Emphasis added.)

I agree with the majority that "inspection" as discussed in Act 105 in the context of an inspection schedule is not synonomous with "investigation" as discussed in Section 1007 of the Code in the context of annual licensure. I do not agree, however, that the former can be read separate and apart from the latter. While the actual term "inspection" is not used in Section 1007 of the Code, that section's requirements that the investigation satisfy the Department that the *facility* is suitable and appropriately equipped and that the *place* meets *all* the requirements of the Code can only be interpreted to mean that an inspection is *part* of the investigation requirement, *i.e.* no investigation is complete unless an inspection has been conducted. Thus, the language of Act 105 specifically allowing the Department to establish an inspection cycle which may provide that no licensed personal care boarding home be inspected more than once every two years is in direct conflict with the *annual* investigation and licensure require-

488

ments of Sections 1006, 1007 and 1009 of the Code, 62 P.S. §§1006, 1007 and 1009. Moreover, even if an investigation did not require an inspection per se, I am at a loss to see how the elements of Section 1007 of the Code could possibly be satisfied on an annual basis without the Department conducting a visit to the facility to be licensed. This is patently at odds with Act 105's provision that "personal care boarding homes need not be visited . . . annually." Accordingly, as it is well settled that where, as here, provisions of two statutes are irreconcilable, the provisions of the statute enacted the latest in date shall prevail, Section 1936 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1936. I would therefore hold that the requirement of annual investigation and licensure in Sections 1006, 1007 and 1009 of the Code has been implicitly repealed by Act 105 and that the two year licensing period in the Plan and regulations at issue herein is not contrary to the Law.

Moreover, I also feel this conclusion more closely tracks the legislative intent behind Act 105, than does the conclusion reached by the majority. As stated in its preamble, the purpose of Act 105 is to provide a vehicle by which to "eliminate fraudulent, abusive and deceptive conduct and practices that may occur" in the administration of governmentally reimbursed personal care boarding home services under the Code. Consistent with the preamble, Act 105, by explicit terms, requires the Department to "develop and implement" a statewide plan for "regulating *and licensing*" personal care boarding homes. (Emphasis added.) Accordingly, in its preliminary form, which included the two year licensing requirement, *see* 11 Pa. B. 192 (1981), did not see fit to submit any adverse comments to the Department with respect to the licensing provisions.

Therefore, I would affirm the Department's promulgation of the Personal Care Boarding Home Plan and its implementing regulations.