

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-30-1999

# Patriot Party Alghny v. Alghny Cty Dept

Precedential or Non-Precedential:

Docket 96-3677,97-3359

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Patriot Party Alghny v. Alghny Cty Dept" (1999). *1999 Decisions.* Paper 85.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/85

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 30, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-3677 and 97-3359

REFORM PARTY OF ALLEGHENY COUNTY

v.

ALLEGHENY COUNTY DEPARTMENT OF ELECTIONS;
MARK WOLOSIK, Director of the Allegheny County
Department of Elections,

      Appellants.

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil Action No. 93-cv-01884 and 97-3359)
[District Judge: Honorable William L. Standish

Argued: December 12, 1997

Before: NYGAARD, ALITO, Circuit Judges
and DEBEVOISE, District Judge1

Reargued January 13, 1999

Before: BECKER, Chief Judge, SLOVITER, STAPLETON,
MANSMANN, GREENBERG, SCIRICA, NYGAARD, ALITO,
ROTH, LEWIS, MCKEE, RENDELL and ROSENN,
Circuit Judges

(Opinion filed: March 30, 1999)

_____

1. The Honorable Dickinson R. Debevoise, Senior United States District
Judge for the District of New Jersey, sitting by designation.

Kerry Fraas
County Solicitor
Allan J. Opsitnick (Argued)
Assistant County Solicitor
Michael McAuliffe Miller
Assistant County Solicitor
Allegheny County Law Dept.
300 Ft. Pitt Commons
445 Ft. Pitt Blvd.
Pittsburgh, PA 15219

 Attorneys for Appellants

Cornish F. Hitchcock, Esquire
 (Argued)
Public Citizen Litigation Group
1600 20th Street, N.W.
Washington, D.C. 20009-1001

Sarah E. Siskind, Esquire
Miner, Barnhill & Galland
44 East Mifflin Street, Suite 803
Madison, WI 53703

Jonathan B. Robison, Esquire
712 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

 Attorneys for Appellee

OPINION OF THE COURT

ROTH, Circuit Judge:

In this en banc review, we must determine to what extent our earlier decision in Patriot Party of Allegheny County v. Allegheny County Dep't of Elections, 95 F.3d 253 (3d Cir. 1996) (Patriot Party I), remains good law in the wake of the Supreme Court's decision in Timmons v. Twin Cities Area New Party, 117 S. Ct. 1364 (1997). In Patriot Party I, we held that the Pennsylvania statutes at issue, which in certain local elections bar cross-nomination of candidates by minor parties, but not by major parties, violated the

2

Patriot Party's[2] right to freedom of association under the First and Fourteenth Amendments, as well as its right to equal protection of the laws under the Fourteenth Amendment. We now conclude that the decision in Timmons, in upholding a Minnesota "anti-fusion" statute against a First Amendment attack, does not undercut our equal protection analysis in Patriot Party I. We will, therefore, reaffirm our holding that the Pennsylvania statutes here, as applied to the local elections in question, violate the Patriot Party's right to equal protection of the laws.

I. Background

This en banc review implicates two separate but related cases. In both cases, the Patriot Party challenged the constitutionality of Pennsylvania's ban on minor party "cross-nominations" in certain local offices, 25 Pa. Stat. Ann. SS 2936(e) and 2911(e)(5), as a violation of the Patriot Party's right to freedom of association and its right to the equal protection of the laws. In essence, the challenged statutes prevent minor political parties from cross-nominating a candidate for certain local offices when that candidate has already been nominated for the same office by another political party. The major parties, however, are allowed to engage in cross nomination or "fusion" for those local offices.[3] As a consequence, while Pennsylvania prohibits all parties from cross-nominating the same person for most state offices, it makes an exception in primary elections for five local offices,[4] in which major parties are

_____

2. By Order dated January 14, 1999, this court granted plaintiff 's motion to amend the caption to change the name of Patriot Party of Allegheny County to Reform Party of Allegheny County. In this opinion, we will continue to use the former appellation.

3. "Fusion" is "the nomination by more than one political party of the same candidate for the same office in the same general election." Timmons, 117 S. Ct. at 1367 n.1 (citing Twin Cities Area New Party v. McKenna, 73 F.3d 196, 197-98 (8th Cir. 1996)).

4. The five offices are "judge of a court of common pleas, the Philadelphia Municipal Court or the Traffic Court of Philadelphia, . . . school director in a district where that office is elective, or . . . justice of the peace." 25 Pa. Stat. Ann. S 2870(f).

permitted to cross-nominate each other's candidates, but
minor parties are prohibited from so doing.5

The undisputed facts of the first case (No. 97-3359) are
set forth in Patriot Party I, but we summarize them briefly
here. The case stemmed from the Patriot Party's attempt to
nominate Michael Eshenbaugh as a candidate for school
director in Pennsylvania's North Allegheny School District
in the November 1993 general election. This nomination
was barred by the application of the fusion ban, because
Eshenbaugh had already sought the nomination of both
major parties in the May 1993 municipal primary, in which
he had secured the nomination of the Democratic Party,
but not of the Republican Party.
_____

5. The court in Patriot Party I explained the structure of the challenged
statutes:

>     As a minor political party, the Patriot Party does not file
>     "nomination petitions" for the primary elections, as do the major
>     political parties. Instead, the Patriot Party, like other minor
political
>     parties, must file "nomination papers" containing the number of
>     signatures specified by Pennsylvania law. 25 Pa. Stat. Ann. S 2872.
>
>     Section 2936(e) of the Pennsylvania Code prohibits the filing of a
>     nomination paper "if the candidate named therein has filed a
>     nomination petition for any public office for the ensuing primary,
or
>     has been nominated for any such office by nomination papers
>     previously filed. . . ." Furthermore, S 2911(e)(5) requires that
>
>     [t]here shall be appended to each nomination paper ... an affidavit
>     of each candidate nominated therein, stating-- . .. (5) that his
>     name has not been presented as a candidate by nomination
>     petitions for any public office to be voted for at the ensuing
>     primary election, nor has he been nominated by any other
>     nomination papers filed for any such office. . ..
>
>     The above sections of the election code apply only to the
>     "nomination papers" filed by minor parties and not to "nomination
>     petitions" filed by the major parties participating in the
primaries.
>     Thus, while S 2870(f) of the Pennsylvania election code expressly
>     allows the major parties to cross-nominate candidates for school
>     director, SS 2936(e) and 2911(e)(5) prevent such cross-nomination
by
>     minor political parties.

Patriot Party I, 95 F.3d at 256 n.1.

In February 1994, the Patriot Party filed suit for declaratory and injunctive relief under 42 U.S.C.S 1983 against the Allegheny County Department of Elections and its director (collectively, "the Department"), alleging that the two relevant sections of the Pennsylvania Election Code violate the Patriot Party's right of free association under the First and Fourteenth Amendments, as well as its right to equal protection of the laws under the Fourteenth Amendment. The District Court granted summary judgment for the Department. On appeal, a divided panel of this court reversed the District Court's ruling on September 9, 1996, in Patriot Party I. On November 4, 1996, we denied the Department's petition for rehearing en banc. The Department did not seek a writ of certiorari. On remand, the District Court entered an order granting declaratory and injunctive relief in favor of the Patriot Party.

Four months later, on April 28, 1997, the Supreme Court issued its decision in Timmons. As a result, on April 30, the Department filed a motion for relief from judgment in this case pursuant to Fed. R. Civ. P. 60(b). The District Court denied the requested relief. The Department appealed that order, and another panel of this court affirmed it in an opinion filed June 15, 1998 ("Patriot Party II"), which we will discuss further in connection with the second case.

The undisputed facts of the second case (No. 96-3677) also involve a nomination to the office of school director in the North Allegheny School District. On May 13, 1995, the Patriot Party selected several candidates for this office, including Barbara Childress. On May 16, 1995, before the municipal primary elections, Childress perfected her nomination as one of the Patriot Party's candidates by filing nomination papers with the Department.

Childress also sought the nominations of the Republican and Democratic parties, and in the municipal primary she won both of these nominations. On May 24, 1995, the Department informed Childress that, since she had previously filed nomination petitions seeking the nominations of the major parties, she was prohibited from seeking the nomination by a minor party.

The Patriot Party brought an action pursuant to 42 U.S.C. S 1983, seeking injunctive and declaratory relief,

5

alleging once again that the two pertinent sections of the Pennsylvania Election Code violate the Patriot Party's right of free association and its right to equal protection of the laws. The Department filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), while the Patriot Partyfiled a motion for summary judgment under Fed. R. Civ. P. 56. In October 1996 (several months before Timmons was decided), the District Court, relying on this Court's decision in Patriot Party I, granted the Patriot Party's motion for summary judgment, denied the Department's motion to dismiss, and entered an order granting the requested injunctive and declaratory relief. On appeal, that order was also affirmed in Patriot Party II. In Patriot Party II, the panel recognized that Patriot Party I had held that the Pennsylvania laws violated the equal protection rights of the Patriot Party. The panel concluded that it was bound by Patriot Party I insofar as the equal protection holding had not been overruled by Timmons.

On June 30, 1998, the Department filed a petition for rehearing en banc, asking us to decide whether Patriot Party I (and by extension, Patriot Party II ) has been overruled by Timmons. On July 22, 1998, we granted the petition for rehearing en banc. For the reasons we set out below, we conclude that Patriot Party I has not been overruled to the extent that it held that the Patriot Party's right to equal protection of the laws was violated by the ban on minor party fusion in the local elections in question.

II. Patriot Party I and Timmons

To begin our discussion, it is helpful first to review the holdings in Patriot Party I and in Timmons. In Patriot Party I, a panel of this court held that 25 Pa. Stat. Ann. SS 2936(e) and 2911(e)(5), which prohibit minor parties, but not major parties, from cross-nominating candidates in certain local elections, violate minor parties' rights to freedom of association and equal protection of the laws.

In its freedom of association analysis, the Patriot Party I panel applied the standard set forth in Supreme Court precedent, including Eu v. San Francisco County Democratic Cent. Comm., 489 U.S. 214, 222 (1989), and Anderson v.

6

Celebrezze, 460 U.S. 780, 789 (1983). The panel reiterated
the standard:

> To determine whether a state election law violates the
> U.S. Constitution, we first examine whether the
> challenged law burdens rights protected by the First
> and Fourteenth Amendments. If the law does burden
> protected rights, we must gauge the character and
> magnitude of the burden on the plaintiff and weigh it
> against the importance of the interests that the state
> proffers to justify the burden. We examine not only the
> legitimacy and strength of the state's proffered
> interests, but the necessity of burdening the plaintiff's
> rights in order to protect those interests. If the burden
> on the plaintiff's rights is severe, the state's interest
> must be compelling and the law must be narrowly
> tailored to serve the state's interests.

Patriot Party I, 95 F.3d at 258 (citations omitted).

The panel, applying the standard, concluded that the
Pennsylvania statutes infringed upon the Patriot Party's
right of free association in two ways: "First, the restriction
prevents the Party from nominating the standard bearer
who the Party thinks will `most effectively advance [its]
program and platform.' Second, the challenged election
laws deprive the Patriot Party of an opportunity to`fuse' its
votes with those of a major party and thereby to make
inroads into the political process." Id. Because the panel
found these burdens to be severe, it held that Pennsylvania
"must demonstrate that these laws are narrowly tailored to
serve a compelling state interest." Id. at 264. The panel
concluded, however, that the justifications offered by the
Department did not meet this test. Id. Specifically, the
Department had argued that four important state interests
were served: "(1) preventing `sore loser' candidacies; (2)
preventing individual candidates from `monopolizing' the
ballot and causing voter confusion; (3) preventing a
candidate from `bleed[ing] off votes of independent voters to
bolster his or her major party endorsement'; and (4)
encouraging new candidates to run as independents." Id.
The panel examined each of these interests and found that
they did not bear scrutiny. Id. at 264-68.

7

The panel also held that the challenged statutes violate minor parties' right to equal protection of the laws. The panel observed that the statutes facially discriminated between major and minor parties, and that in this respect the case was distinguishable from the Minnesota statutes the Eighth Circuit Court of Appeals had considered in Timmons. Id. at 268. Relying on the principles and structure of the equal protection analysis in the Supreme Court's decision in Williams v. Rhodes, 393 U.S. 23 (1968), the panel examined whether the election laws created invidious distinctions or classifications. Patriot Party I, 95 F.2d at 269 (citing Williams, 393 U.S. at 30). The panel delineated its task as follows: "we must measure the totality of the burden that the laws place on the voting and associational rights of political parties and individual voters against the justifications that the State offers to support the law." Id. (citing Williams, 393 U.S. at 34). Applying this analysis, the panel concluded that "Pennsylvania's decision to ban cross-nomination by minor parties and to allow cross-nomination by major parties constitutes the type of `invidious discrimination' prohibited by the Fourteenth Amendment." Id. The panel noted that, by treating minor and major parties differently, the statutes burdened both minor parties and the voters that support them. Id. The panel reiterated its earlier conclusion that, in the face of these unequal burdens, the Department had offered no compelling justifications. Id. ("Pennsylvania imposes these unequal burdens on the right to vote and the right to associate without protecting any significant countervailing state interest.").

In Timmons, the Supreme Court upheld Minnesota laws that imposed a general ban on fusion candidacies. The Court applied the same test that the panel had applied in Patriot Party I but concluded that the Minnesota laws did not violate the right to freedom of association. Assessing the burdens placed on minor political parties' associational rights, the Court rejected the argument that a severe burden was imposed by the fact that a party might be prevented from nominating a particular individual as its standard bearer. Timmons, 117 S. Ct. at 1370 ("That a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that

8

party's association rights."). The Court then rejected an argument that the fusion ban imposed a severe burden on minor parties' attempts to organize or develop political alliances. Id. at 1371 ("Minnesota has not directly precluded minor political parties from developing and organizing. . . . Nor has Minnesota excluded a particular group of citizens, or a political party, from participation in the election process."). In sum, the Court concluded the burdens on associational rights imposed by the fusion ban "--though not trivial--are not severe." Id. at 1372.

Having determined that the burdens were not severe, the Court proceeded to conduct a "less exacting review," in which "a State's `important regulatory interests' will usually be enough to justify `reasonable, nondiscriminatory restrictions.' " Id. at 1370 (quoting Burdick v. Takushi, 504 U.S. 428, 434 (1992) (internal quote marks omitted)). The Court reasoned that "the State's asserted regulatory interests need only be `sufficiently weighty to justify the limitation' imposed on the [minor party's] rights." Id. at 1372 (quoting Norman v. Reed, 502 U.S. 279, 288-89 (1992)). Although the Court declined to consider Minnesota's alleged interest in "avoiding voter confusion," id. at 1375 n.13, the Court concluded that the burdens imposed by the Minnesota's fusion ban on minor parties' associational rights were "justified by `correspondingly weighty' valid state interests in ballot integrity and political stability." Id. at 1375.

III. The Rule 60(b)(6) Motion

As a preliminary matter, we must determine if the District Court properly denied the Department's Fed. R. Civ. P. 60(b)(6) motion for relief from judgment filed in Eshenbaugh's case.6 The panel in Patriot Party II affirmed the District Court's denial of the motion. We agree.

We review a district court's denial of a Rule 60(b) motion for abuse of discretion. Central W. Rental Co. v. Horizon
_____

6. The Department moved for relief from judgment under Rule 60(b)(4) and (6), but on appeal, they have abandoned the former, opting only for relief under Rule 60(b)(6).

9

Leasing, 967 F.2d 832, 836 (3d Cir. 1992). An abuse of discretion may be found when "the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." International Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 95 (3d Cir. 1987).

Relief under Rule 60(b)(6) "is available only in cases evidencing extraordinary circumstances." Martinez–McBean v. Government of Virgin Islands, 562 F.2d 908, 911 (3d Cir. 1977) (quoting Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir. 1975)). Furthermore, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." Agostini v. Felton, 117 S. Ct. 1997, 2018 (1997). As we will discuss below, the Supreme Court's decision in Timmons did not overrule the holding of the Patriot Party I panel that the Pennsylvania statutes at issue violate the Equal Protection Clause. Therefore, as the panel in Patriot Party II recognized, no extraordinary circumstances exist that would justify granting the Department's motion under Rule 60(b)(6).

Furthermore, to the extent that the Department is attempting to use its Rule 60(b)(6) motion as a means of seeking review of our decision in Patriot Party I, a Rule 60(b)(6) motion may not be used as a substitute for an appeal. Martinez–McBean, 562 F.2d at 911. The Department chose not to petition for certiorari in the Eshenbaugh case even though it was on notice that the Timmons case was then pending before the Supreme Court. Indeed, a petition for certiorari might have obviated the need for this en banc review. The Department cannot attempt to second–guess that decision now with its Rule 60(b)(6) motion.

For the above stated reasons, we find no abuse of discretion in the District Court's denial of the Rule 60(b) motion. The District Court properly concluded that the outcome in Eshenbaugh's case (No. 97–3359) could not be reopened for further consideration.

IV. The Equal Protection Claim

We turn now to the Patriot Party's motion for summary judgment in Childress's case (No. 96–3677), the granting of

10

which was affirmed by the panel in Patriot Party II. The granting of summary judgment by a district court is subject to plenary review. American Med. Imaging Corp. v. St. Paul Fire & Marine Ins. Co., 949 F.2d 690, 692 (3d Cir. 1991).

The primary issue before us is whether the Patriot Party's equal protection claim is still viable after Timmons.[7] Nothing in the Timmons opinion itself weakens the equal protection analysis of Patriot Party I, because no equal protection claim was asserted or considered by the Court in Timmons. The statutory scheme in Timmons differs from the Pennsylvania scheme in a manner crucial for the equal protection analysis. Timmons involved an across-the-board ban on fusion by both major and minor parties. In contrast, the Pennsylvania statutes involve a ban on cross-nomination that facially discriminates against minor parties by allowing major parties, but not minor parties, to cross-nominate in certain circumstances. The Supreme Court in Timmons did not hold that states can treat minor parties in a discriminatory way. Indeed, in discussing the test for deciding whether state election laws violate First and

_____

7. We have chosen not to address whether the Supreme Court's opinion in Timmons eviscerates the associational rights analysis in Patriot Party I. In our current opinion, we hold only that 25 Pa. Stat. Ann. SS 2936(e) and 2911(e)(5) are unconstitutional because they violate a minor party's right to equal protection of the laws. Some degree of the associational rights analysis in Patriot Party I may remain viable because the Pennsylvania laws, in contrast to the Minnesota laws in Timmons, facially discriminate between major and minor parties, thus exacerbating the burdens imposed on minor parties. Because, however, our equal protection analysis is directed at the impact of this same discriminatory language, we do not go on to examine it as it applies to the right to freedom of association.

Nevertheless, to the extent that it can be suggested that the associational rights analysis in Patriot Party I  may have state-wide or circuit-wide implications for election processes, see Patriot Party I, 95 F.3d at 272 (Greenberg, J., dissenting) (arguing that the majority's approach in Patriot Party I "leads to the conclusion that Pennsylvania (and the other jurisdictions in this circuit) must permit cross-filing in all
elections"), we note that the Timmons decision, in ruling that a generally applicable anti-fusion law does not unconstitutionally infringe on associational rights, appears indeed to foreclose such a suggestion.

11

Fourteenth Amendment associational rights, the Court wrote:

> Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's " `important regulatory interests' " will usually be enough to justify " `reasonable, nondiscriminatory restrictions.' "

Timmons, 117 S. Ct. at 1370 (emphasis added). Thus, even though the Court held that the burdens posed by fusion bans on parties and voters are not severe, the Court still maintained a requirement that the restrictions be reasonable and nondiscriminatory. Because the Pennsylvania law permits fusion by major parties, but prohibits fusion by minor parties, it is, on its face, discriminatory.8

Moreover, the Court in Timmons did not overrule in any way its decision in Williams v. Rhodes, 393 U.S. 23 (1968), on which the Patriot Party I panel relied in its equal protection analysis. Rather, the Court cited Williams favorably. See Timmons, 117 S. Ct. at 1374 (citing Williams for the proposition that the State interest in the stability of its political system "does not permit a State to completely insulate the two-party system from minor parties' or independent candidates' competition and influence").

In Williams, the Supreme Court stated at the outset:

> It is true that this Court has firmly established the principle that the Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution. But

_____

8. An argument could be made that the Court in Timmons did in fact give states permission to treat minor parties differently. For example, the Court wrote that "the States' interest permits them to enact reasonable regulations that may, in practice, favor the traditional two party system."
Timmons, 117 S. Ct. at 1374. This argument is disposed of, however, by the recognition that there is a difference between regulations that "in practice" favor a two party system and those that on their face discriminate between major and minor parties. The Pennsylvania statutes discriminate on their face between major and minor parties.

12

> we have also held many times that `invidious' distinctions cannot be enacted without a violation of the Equal Protection Clause.

Williams, 393 U.S. at 30. The Court went on to define the applicable test: "In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification." Id.9

As the panel in Patriot Party I explained,"[i]n Williams, Ohio election laws made it virtually impossible for new or small political parties to be placed on the state ballot for the selection of presidential and vice presidential candidates." Patriot Party I, 95 F.3d at 268 (citing Williams, 393 U.S. at 24). "Thus, the challenged laws violated the constitutional guarantee of equal protection because they `[gave] the two old, established parties a decided advantage over any new parties struggling for existence and . . . place[d] substantially unequal burdens on both the right to vote and the right to associate.' " Id. (quoting Williams, 393 U.S. at 24). The panel in Patriot Party I acknowledged that "[t]he restriction in Williams, which prevented minor parties from appearing on the ballot, was undoubtedly a more severe burden on the rights of minor parties than the restriction imposed by the state election laws in this case." Id. at 269. Nonetheless, the panel held that "Pennsylvania's decision to ban cross-nomination by minor parties and to allow cross-nomination by major parties constitutes the type of `invidious discrimination' prohibited by the Fourteenth Amendment." Id. We reaffirm this holding for the reasons set forth below.

_____

9. In Patriot Party I, after reciting the Williams test, the panel wrote that
"our analysis of the Patriot Party's equal protection claim is similar in many respects to the balancing test that we applied to its free association claim." Patriot Party I, 95 F.3d at 269. From this, the Department tries to argue that if the free association claim is vitiated by
Timmons, then a fortiori the equal protection claim is also vitiated. This argument ignores, however, the fact that the equal protection analysis is sufficiently different from the free association analysis so as to stand on
its own.

13

The first question to be addressed in an equal protection challenge is what level of scrutiny we should apply in reviewing the challenged laws. In order to make this decision, we must assess the impact of the laws on the rights at stake. See, e.g., Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979) (holding that "[r]estrictions on access to the ballot burden two distinct and fundamental rights" and that "a State must establish that its classification is necessary to serve a compelling interest"); Bullock v. Carter, 405 U.S. 134, 142-44 (1972) (concluding that a "Texas filing-fee scheme has a real and appreciable impact on the exercise of the franchise" and that the laws must therefore be " `closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster"). In Williams, for example, the Court began its analysis by identifying the rights burdened by the challenged state laws -- "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." Williams, 393 U.S. at 30. The Court reasoned that the laws in question placed "substantially unequal burdens on both the right to vote and the right to associate." Id. at 31. The Court stated: "In determining whether the State has power to place such unequal burdens on minority groups where rights of this kind are at stake, the decisions of this Court have consistently held that `only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.' " Id. (citing NAACP v. Button, 371 U.S. 415, 438 (1963)).

In the instant case, therefore, we must identify the burdens imposed by the Pennsylvania laws. In Patriot Party I, the panel, in its equal protection analysis, identified the following burdens: First, the ban on minor party cross-nomination "burdens individuals who support a minor party's platform because it forces them to choose among three unsatisfactory alternatives: `wasting' a vote on a minor party candidate with little chance of winning, voting for a second-choice major party candidate, and not voting at all." Patriot Party I, 95 F.3d at 269. Second, the ban

14

burdens the political parties themselves because they "may prohibit a minor party from nominating its best candidate and from forming a critical type of consensual political alliance that would help it build support in the community. Thus, the challenged laws help to entrench the decided organizational advantage that the major parties hold over new parties struggling for existence." Id.

The Court in Timmons addressed similar burdens (in its associational rights analysis) in the context of a general ban on fusion and concluded that the burdens, although not trivial, were not severe. Timmons, 117 S. Ct. at 1370-72. The Court then proceeded to apply not strict scrutiny, but an intermediate level of scrutiny, in which "the State's asserted regulatory interests need only be `sufficiently weighty to justify the limitation' imposed on the[minor party's] rights." Id. at 1372 (citing Norman, 502 U.S. at 288-89). Under this standard, the Court indicated that it would not "require elaborate, empirical verifications of the weightiness of the State's asserted justifications." Id. (citing Munro v. Socialist Workers Party, 479 U.S. 189, 195-96 (1986)).

If we assume, and we believe we must, that the above stated burdens require the same level of scrutiny in an equal protection analysis that they do in an associational rights analysis, then we must now apply an intermediate level of scrutiny. In doing so, we will recognize, however, that because of the discriminatory aspects of the Pennsylvania statutes, the burdens imposed by them on voters and on political parties are more onerous than those involved in Timmons. In Timmons, the asserted burdens existed in the context of an across-the-board ban on fusion. Timmons, 117 S. Ct. at 1370 (noting that the Minnesota ban, "which applies to major and minor parties alike, simply precludes one party's candidate from appearing on the ballot, as that party's candidate, if already nominated by another party"). In the instant case, the burden is exacerbated because Pennsylvania has allowed the major parties to cross-nominate but has disallowed minor parties from doing the same. As the panel in Patriot Party I wrote:

> The ill effects of these laws are further magnified when
> the major parties elect to cross-nominate the same

15

candidate, as they did in the school board election at issue. When the major parties cross-nominate a candidate, a minor party candidate must fight an uphill election battle against the combined strength of two well-organized and established major parties without even the prospect of forming its own ballots alliances. If a vote is "wasted" when it is cast for a minor party candidate running against two major party candidates, it is a fortiori wasted when the major parties unite behind one candidate.

Patriot Party I, 95 F.3d at 269.

Using an intermediate level of scrutiny, our next step is to weigh, against the burdens imposed, any plausible justification the State has advanced for imposing unequal burdens on major and minor parties. Cf. Romer v. Evans, 517 U.S. 620, 632 (1996) ("[E]ven in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained."). Wefind no such justification. Although the Department has identified justifications, such as preventing ballot manipulation and preserving political stability, that were recognized in Timmons to be legitimate state interests, see Timmons, 117 S.Ct. at 1373-74, the Department has not demonstrated how these interests are served by the unequal burden imposed here. Indeed, the Department acknowledges in its brief that it has no idea why the Pennsylvania legislature chose to allow major party cross-nomination in thefive local elections at issue here, but denied the same opportunity to minor parties. Department Br. at 17. 10

_____

10. The Commonwealth of Pennsylvania has also declined to assert any interests to justify this discrimination. We note that, in both Eshenbaugh's and Childress's case, the District Court served the requisite notice on the Attorney General of Pennsylvania, advising that the cases challenged the state laws in question, thus giving the Commonwealth an opportunity to intervene to defend them. See 28 U.S.C. S 2403(b). In addition, the Attorney General was invited by this Court to submit an amicus brief to supplement the Department's defense of the statutory scheme in this appeal. In each instance, including this appeal, the Attorney General chose not to intervene or defend the constitutionality of the challenged laws.

As the panel in Patriot Party I explained, "Pennsylvania imposes these unequal burdens on the right to vote and the right to associate without protecting any significant countervailing state interest." Patriot Party I, 95 F.3d at 269. In the context of the equal protection claim, Pennsylvania has not asserted any regulatory interests that are "sufficiently weighty" to justify the discriminatory treatment of major and minor parties.

When we consider constitutional challenges to specific provisions of a State's election laws, we cannot speculate about possible justifications for those provisions. The court "must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." Anderson, 460 U.S. at 789; cf. Edenfield v. Fane, 507 U.S. 761, 768 (1993) (observing that, unlike rational basis review, the intermediate standard of review applicable in commercial speech cases "does not permit [the Court] to supplant the precise interests put forward by the State with other suppositions"). Furthermore, our analysis is confined to the four state interests asserted by the Department to the District Court.11

_____

11. At oral argument, the Department asserted, for the first time, that allowing major party cross-nomination for the five local offices served a state interest in making those offices nonpartisan or less partisan. The Department's failure to raise this argument in its appeal briefs, as well as before the District Court, would alone be fatal for the argument. "An issue is waived unless a party raises it in its opening brief, and for those
purposes `a passing reference to an issue . . . will not suffice to bring that issue before this court.' " Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991) (plurality opinion) (Becker, J.)). Even if we were to consider this state interest, however, it
does not persuade us, because the Department fails to explain why the interest requires or allows for discrimination against minor parties.

In addition, the Department, following the dissent in Patriot Party I, now tries to assert a state interest in ensuring that partisan voters who wish to vote for a "pure" Democrat or Republican know at the time of the major party primary whether the major party candidate will accept a minor party cross-nomination. The Department, however, in arguing this case before the Patriot Party I panel, "never asserted that the Commonwealth had any such interest in protecting partisan voters, even

17

"It is well established that failure to raise an issue in the district court constitutes a waiver of the argument." Brenner v. Local 514, United Bhd. of Carpenters, 927 F.2d 1283, 1298 (3d Cir. 1991).

As summarized in Patriot Party I, the Department advanced four state interests to the District Court: "(1) preventing `sore loser' candidacies; (2) preventing individual candidates from `monopolizing' the ballot and causing voter confusion; (3) preventing a candidate from `bleed[ing] off votes of independent voters to bolster his or her major party endorsement'; and (4) encouraging new candidates to run as independents." Patriot Party I, 95 F.3d at 264. With respect to all four purported state interests, no effort is made by the state to show why those interests justify permitting the major parties to cross-nominate, while forbidding the minor parties from doing so. While such interests may be sufficiently weighty in light of Timmons to justify a general ban on fusion, they are not sufficiently weighty to justify a ban that discriminates between major and minor parties.

First, the sore loser justification is insufficient to satisfy the applicable level of intermediate scrutiny. As the panel explained in Patriot Party I, sore losers "are candidates who lose a major party primary but insist on running on a minor party ticket in the general election." Id. at 265. Another panel of this court recently recognized that sore loser and disaffiliation laws have been upheld. Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 881 (3d Cir. 1997) (citing Storer v. Brown, 415 U.S. 724 (1974)).12

_____

after it was suggested as a possibility at oral argument." Patriot Party I, 95 F.3d at 264 n.6. The panel concluded that, "[b]ecause the Department has shown no interest in pursuing this line of argument, we will not dwell on it in this opinion." Id. Even if we were to consider the Department's latest reversal of position, we would not find this state interest persuasive. Once again, the Department does not explain why a voter's alleged interest in knowing which "pure" candidates will refuse a cross-nomination justifies discrimination against minor parties.

12. The Court in Timmons relied on Storer, in which the Court "upheld a California statute that denied ballot positions to independent

18

The panel in Hooks, however, rejected New Jersey's attempt to justify early filing deadlines on the grounds that they prevented sore loser candidacies, stating that "they are both too broad . . . and too narrow." Id. (citing Anderson, 460 U.S. at 805 & n.31). Similarly, the Pennsylvania laws at issue here cannot be justified as preventing sore loser candidacies because they are too broad and too narrow. As the panel noted in Patriot Party I, the Pennsylvania laws only "prevent sore loser candidacies insofar as they prevent a candidate who failed to win either major party primary from running as a minor party candidate in the general election." Patriot Party I, 95 F.3d at 165. The laws are too broad, however, because they bar a third party from nominating a candidate such as Ms. Childress even though she did not lose either primary race and was thus not a sore loser. They are too narrow because they do not prevent candidates like Mr. Eshenbaugh from continuing on as the Democratic candidate even though he had lost the Republican primary.

Next, the Department asserts a state interest in preventing voter confusion and ballot clogging caused by

_____

candidates who had voted in the immediately preceding primary elections or had a registered party affiliation at any time during the year before the same primary elections." Timmons, 117 S. Ct. at 1374 (citing Storer, 415 U.S. at 728). The disaffiliation provision in Storer, however, differs from the Pennsylvania laws in at least one crucial respect. The Court in Timmons noted that in Storer , the challenged law "did not discriminate against independent candidates." Timmons, 117 S. Ct. at 1374 (citing Storer, 415 U.S. at 734). Indeed, in describing the California statute, the Court in Storer observed that, apart from the fact that an independent candidate needed to "qualify for the ballot by demonstrating substantial public support" in some other way than standing for a primary election, "the qualifications required of the independent candidate are very similar to, or identical with, those imposed on party candidates." Storer, 415 U.S. at 733.

Similarly, the Court in Timmons quoted from its decision in Burdick v. Takushi, in saying that " `we have repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activit[ies] at the polls.' " Timmons, 117 S. Ct. at 1375 (quoting Burdick, 504 U.S. at 437–38). Because the Pennsylvania laws discriminate against minor parties, they are not politically neutral.

19

the monopolization of the ballot by minor candidates and the proliferation of parties. The Department, however, does not explain why minor parties can be prevented from monopolizing the ballot and causing voter confusion when the major parties are allowed to do so through major party cross-nomination. In upholding Minnesota's general fusion ban, the Court in Timmons specifically disclaimed reliance on the state's alleged interest in avoiding voter confusion. Timmons, 117 S. Ct. at 1375 n.13. This asserted interest carries even less weight here. Indeed, the fact that the Pennsylvania laws discriminate between major and minor parties undermines this asserted interest, because major party cross-nomination (which is allowed) would seem to pose just as large a risk of voter confusion. Moreover, as the panel observed in Patriot Party I, "the Department has presented no evidence to indicate that fusion is likely to produce a crippling proliferation of minor parties. . . . Furthermore, Pennsylvania retains the authority to set reasonable threshold requirements for parties seeking admission to the ballot." Patriot Party I, 95 F.3d at 266.

The Department also asserts that allowing cross-nomination by minor candidates will allow a candidate to bleed off votes of independent voters to bolster his or her major party endorsement. This state interest was not raised in the Timmons case, and we reject it here. As the panel pointed out in Patriot Party I, "[c]ross nomination will not increase a major party's share of minor party votes unless the minor party voluntarily nominates the major party candidate as its own." Id. at 267. Indeed, allowing the major parties to cross-nominate may actually serve to bleed off minor party votes, as an individual who supports a minor party's platform but does not want to waste a vote on a minor candidate may cast a ballot instead on a candidate who has been nominated by both major parties. Once again, the fact that major parties are allowed to cross-nominate undermines this proffered state interest.

Finally, the argument that the laws serve an interest in encouraging new candidates to run as independents is also undermined by the fact that major parties may cross-nominate. "If the Commonwealth bans cross-nomination by minor parties to encourage new candidates for office, it

20

should logically prohibit cross-nomination by major parties for the same reason. An across-the-board ban on cross-nomination would require the major parties to nominate their own candidates, thus increasing the number of candidates in the field and the level of electoral competition." Id. If anything, the current statutory scheme may discourage independent candidates. A three-way race against two major party candidates would be formidable enough for an independent candidate. An independent candidate would face an even greater challenge running against a candidate nominated by both major parties.

In sum, we find unpersuasive each of the interests that the Department has offered in support of Pennsylvania's discriminatory statutory scheme. The fact that Pennsylvania allows major parties to engage in cross-nomination in certain local elections, but forbids minor parties from so doing, constitutes "invidious discrimination" in violation of minor parties' right to equal protection of the laws. The facially discriminatory nature of the laws imposes a heavier burden on minor parties than a general fusion ban of the type considered in Timmons. Moreover, unlike the Timmons case, the Department in this case has offered no "important" or "sufficiently weighty" state interests that justify, even under intermediate scrutiny, the discriminatory burdens imposed on minor parties.

V. Conclusion

We reaffirm the holding of the Patriot Party I panel that 25 Pa. Stat. Ann. SS 2936(e) and 2911(e)(5) violate the Patriot Party's right to equal protection of the laws by banning cross-nomination of candidates by minor parties in certain local elections. Therefore, we will affirm the orders of the District Court denying Rule 60(b) relief in Eshenbaugh's case (No. 97-3359) and granting summary judgment for the Patriot Party in Childress's case (No. 96-3677). The injunction of the District Court, as it appears in Paragraph 4 of the District Court's Order of December 9, 1996, is affirmed as written. However, because we affirm only on equal protection grounds, we will remand the Childress case with instructions that the District Court delete from Paragraph 3 of that Order the phrase"to free

21

association under the First and Fourteenth Amendments of the Constitution, and".13

_____

13. Paragraphs 3 and 4 of the District Court Order of December 9, 1996 state:

3. Article IX, Sections 951(e)(5) and 976(e) of the Act of June 3, 1937, P.L. 1933, Pennsylvania Election Code, (the code) 25 P.S. SS2911(e)(5) and 2936(e) (Sections 2911(e)(5) and 2936(e)) are declared to be an unconstitutional burden on the right of plaintiff, the Patriot Party of Allegheny County, to free association under the First and Fourteenth Amendments of the Constitution, and to equal protection of the law under the Fourteenth Amendment to the Constitution insofar as they prohibit plaintiff, a minor political party, from nominating any person as a Patriot Party candidate for any office referred to in Section 2870(f) of the Code, 25 P.S. S2870(f), because such person is also a major party candidate for that office.

4. Defendants are hereby enjoined from enforcing the provisions of Sections 2911(e)(5) and 2963(e) of the Code to prevent a minor political party from nominating a candidate for any office referred to in Section 2870(f) of the Code because that candidate files a petition for a major party nomination to that office or is nominated as a candidate for that office in the primary election of a major party.

McKEE, Circuit Judge, concurring:

I concur fully with the majority's holding that the Supreme Court's decision in Timmons v. Twin Cities Area New Party does not affect this Court's review of Pennsylvania's discriminatory anti-fusion laws under the Equal Protection Clause. I further concur in the majority's conclusion that the anti-fusion laws at issue here violate the Equal Protection Clause. I believe, however, that, under the Equal Protection Clause, when a law both discriminates and burdens a fundamental right, strict scrutiny, rather than intermediate scrutiny, applies. See Clark v. Jeter, 486 U.S. 456, 461 (1988) ("Classifications based on race or national origin and classifications affecting fundamental rights are given the most exacting scrutiny.") (internal quotations omitted); Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (discriminatory statutes that interfere with a fundamental right are subject to strict judicial scrutiny); Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 457-58 (1988) (same).

The classification here must be narrowly tailored to serve a compelling State interest to survive an Equal Protection challenge. Indeed, the Supreme Court repeatedly has applied precisely this standard to review ballot restrictions which disparately infringe upon First Amendment associational rights. See, e.g., William v. Rhodes, 393 U.S. 23, 31 (1968) (In reviewing a ballot restriction applicable only to minor parties, the Court stated: "In determining whether the State has power to place such unequal burdens on a minority group where [associational rights] are at stake, the decisions of this Court have consistently held that `only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.' ") (quoting NAACP v. Button, 371 U.S. 415 (1963)); American Party of Texas v. White, 415 U.S. 767, 780 (1974) ("We agree with the District Court that whether the qualifications for ballot position are viewed as substantial burdens on the right to associate or as discriminations against parties not polling 2% of the last election vote, their validity depends upon whether they are necessary to further compelling state interests," which cannot be served "equally well in

23

significantly less burdensome ways."); Storer v. Brown, 415 U.S. 724, 729 (1974) (applying Williams v. Rhodes strict scrutiny to review ballot restrictions on independent candidates); Illinois State Bd. of Elec. v. Socialist Workers, 440 U.S. 173, 184-86 (1979) (applying strict scrutiny standard to review disparate nominating requirements); see also, e.g., Harper v. Virginia State Bd. of Elec., 383 U.S. 663, 670 (1966) ("close scrutiny" applied to poll tax, which discriminates on the basis of wealth, because fundamental right infringed); Bullock v. Carter, 405 U.S. 134, 142-44 (1972) (applying Harper standard to filing fee system).

As the Supreme Court recognized in Timmons, anti-fusion laws, like the ones at issue here, burden First and Fourteenth Amendment associational rights. Timmons, 520 U.S. 351, 357-58 (1997); see also Munro v. Socialist Workers Party, 479 U.S. 189, 193 (1986) (recognizing that balloting and eligibility requirements for minority party candidates impinge fundamental associational rights); Anderson v. Celebrezze, 460 U.S. 780, 786-87 (1983) (same); Williams, 393 U.S. at 30-31 (same). In determining whether the burdens actually violated the First Amendment, the Court stated:

> Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's `important regulatory interests' will usually be enough to justify `reasonable, nondiscriminatory restrictions.'

Timmons, 520 U.S. at 358 (emphasis added). Thus, the Court's decision in Timmons to apply a less exacting standard of review was premised on the fact that the Minnesota anti-fusion laws were nondiscriminatory. That is not our case: Pennsylvania's anti-fusion laws discriminate between major parties and minor parties. Therefore, even assuming that the standard used in Timmons applies in the First Amendment context, I doubt its application in the Equal Protection context.

Thus, because the Pennsylvania anti-fusion laws are both discriminatory and burden a fundamental right, I believe that under established Equal Protection doctrine we must

24

strictly scrutinize Pennsylvania's discriminatory treatment of minority party candidates under the anti-fusion laws. Because I agree with the majority's conclusion that the ballot restrictions do not pass constitutional muster even under the less exacting scrutiny applied by the majority, it necessarily follows that they do not pass muster under the heightened scrutiny standard that I advocate. Accordingly, I concur in the majority's result.

25

GREENBERG, Circuit Judge, concurring and dissenting:

I concur and join in the court's opinion denying the Department's motion under Fed. R. Civ. P. 60(b)(6). I add the following comments, however, with regard to that motion. By the time of our decision in Patriot Party I on September 9, 1996, the Supreme Court had granted certiorari in Twin Cities Area New Party v. McKenna,, 73 F.3d 196 (8th Cir. 1996). See McKenna v. Twin Cities Area New Party, 517 U.S. 1219, 116 S.Ct. 1846 (1996). Thus, the Department had every reason to believe that the Supreme Court would review at least a portion of the theory underlying our opinion in Patriot Party I. Moreover, I dissented in Patriot Party I. See Patriot Party v. Allegheny County Dep't of Elections, 95 F.3d 253, 270 (3d Cir. 1996). Nevertheless, in the face of these encouraging signs, the Department chose not to seek certiorari in Patriot Party I. Therefore, it would be difficult to justify granting the Rule 60(b)(6) motion. Moreover, even though this case has ramifications going beyond the interests of the parties, in view of the court's decision in No. 96-3677, Childress's case, with respect to the equal protection claim, the Department cannot obtain effective relief on the merits in No. 97-3359.

While I join in the result in No. 96-3677, with respect to Childress, the opinion plainly goes too far and thus I must dissent from it. In dissenting in Patriot Party I, I made the following point:

> I recognize that it reasonably could be argued that Pennsylvania could avoid the problem I identify by requiring minor parties to select their candidates prior to the primary election. Of course, such a condition would restrict the minor party's flexibility and would have problems of its own. In any event, the possibility that a minor party could designate its candidate before the major party primary election does not affect my analysis. Rather, I take this case as it has been presented by the parties to this appeal and on the basis on which the majority decides it, which is whether the Pennsylvania statutes are unconstitutional `as applied in this case.' Thus, I do not address the possibility that the Pennsylvania statutes might be

26

> unconstitutional if applied in a situation in which the
> minor party files its nominating papers before the
> primary for, even if they would be unconstitutional in
> that circumstance, they validly can be applied here.
> See Commonwealth v. The First School, 471 Pa. 471,
> 370 A.2d 702, 705-07 (1977). Here the Patriot Party
> nominated Eshenbaugh after the primary, and he
> accepted its nomination at that time, and both the
> district court and the majority adjudicated the case on
> that basis and so do I.

Patriot Party I, 95 F.3d at 271.

The circumstances I contemplated in Patriot Party I that might arise in fact came to pass in Childress's case because, as the majority points out, Childress "perfected her nomination as one of the Patriot Party's candidates by filing nomination papers with the Department" on May 16, 1995, "before the municipal primary elections." Majority Op. at 5. Accordingly, the question for the court to resolve in No. 96-3677 should not be whether 25 Pa. Stat. Ann. SS 2936(e) and 2911(e)(5) are unconstitutional as violating a minor party's right to equal protection of the laws. Rather, the question should be whether the statutes are unconstitutional as violating a minor party's right to equal protection of the law when its candidate declares her intent to cross-file before a primary election. Indeed, the Patriot Party itself well understands this point because in its brief in No. 96-3677 it explains that "[t]he present case (Patriot II) was also filed as an `as applied' challenge after the County refused to permit the Party [to] nominate another candidate (Barbara Childress) in the 1995 municipal election cycle." Br. at 5 (emphasis added).

I will accept the result that the statutes in issue are unconstitutional when applied to a minor party candidate, such as Childress, cross-filing before the primaries, because a candidate by cross-filing before the primary election may seek both major parties' nominations. But sections 2936(e) and 2911(e)(5) surely are not unconstitutional if applied in circumstances paralleling those in Eshenbaugh's case in Patriot Party I, because there the candidate was seeking to cross-file at a time when the major parties had selected their candidates at the primaries

and thus could no longer nominate cross-filing candidates. It therefore follows that applying sections 2936(e) and 2911(e)(5) only when a candidate seeks to cross-file after a primary treats a minor party exactly the same as the major parties. Consequently, there simply cannot be an equal protection problem in those circumstances, as the statutes do not place unequal burdens on minor and major parties. Thus, the Department need not demonstrate any interest to justify discriminatory treatment of major and minor parties, as there is no discriminatory treatment to justify. Accordingly, in declaring sections 2936(e) and 2911(e)(5) unconstitutional without regard for when the candidate cross-files, the majority goes too far.

I close by making one more point. A court sometimes must declare a state statute unconstitutional. Nevertheless should we not, as a federal court, be restrained in taking such action? The Supreme Court of Pennsylvania in Commonwealth v. The First School, 370 A.2d 702, 705-07 (Pa. 1977), made it clear that if a statute can be applied constitutionally in some situations then a court should so apply it. After all, 1 Pa. Cons. Stat. Ann. S 1925 (1995) (emphasis added) provides:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

We should follow First School and apply section 1925 here because it is clear that the statutes easily can be applied constitutionally to a minor party's cross-filing after the primary. Moreover, can anyone really believe that the

28

Legislature would not want sections 2936(e) and 2911(e)(5) applied to minor party candidates filing after the primary merely because they cannot be applied to those filing earlier? Surely, the Legislature would want the statutes applied so far as is possible.

The majority indicates that "[b]ecause the Pennsylvania law permits fusion by major parties, but prohibits fusion by minor parties, it is, on its face, discriminatory." Maj. Op. at 12. A proper respect for judicial restraint should lead us to the result that the discrimination be eliminated by allowing the minor parties to fuse their candidates with the major parties' candidates when the major parties' candidates can fuse with each other. Instead, the majority creates a new type of discrimination, as it allows a minor party to fuse its candidates with those of a major party when the major parties' candidates cannot fuse. Thus, I dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit