

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-8-2007

# WFD Partners v. N Star Steel KY Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1205

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"WFD Partners v. N Star Steel KY Inc" (2007). *2007 Decisions*. Paper 1648.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1648

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

―――――――

Nos. 05-1205 & 05-2004

―――――――

WFD PARTNERS, L.P.,
                              Appellant

v.

NORTH STAR STEEL KENTUCKY, INC.

―――――――

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 04-cv-1063
(Honorable Arthur J. Schwab)

―――――――

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 26, 2007

Before:  SCIRICA, *Chief Judge*, FUENTES and CHAGARES, *Circuit Judges*

(Filed:  February 8, 2007)

―――――――

OPINION OF THE COURT

―――――――

SCIRICA, *Chief Judge*.

        WFD Partners, L.P. appeals a verdict in favor of North Star Steel Kentucky, Inc. in

a breach of contract action, as well as the denial of its motion for relief under Fed. R. Civ.

P. 60(b).  We will affirm.

I.

In March 2004, WFD entered an agreement to sell to North Star certain production equipment and intellectual property associated with it (assignments of a patent and trademark, non-exclusive use of a customer list, and drawings) from a steel mill WFD had purchased. The pertinent terms were: North Star would wire two $82,500 payments, the first within ten days of the agreement's execution and the second after the equipment had been identified but before it had been removed; North Star would also pay a separately-invoiced rate of $250 per ton of equipment removed; and North Star would provide evidence of all insurance coverages reasonably deemed necessary to WFD before removing any equipment. The first $82,500 payment was made as scheduled.

Between May 16 and 18, 2004, North Star employees and subcontractors identified and dismantled equipment for removal from the steel mill. On May 18, North Star plant manager Mark Quiring informed WFD partner David Gur that the second $82,500 payment would not be wired until May 19. With Gur's authorization, North Star then removed a truckload of equipment from the steel mill on May 18. On May 19, WFD partner William Snyder barred North Star from the steel mill, citing uncertainty over the second $82,500 payment, accusing North Star's subcontractors of stealing from the steel mill, and claiming North Star had failed to provide evidence of adequate insurance.

On May 21, Quiring received an email from WFD—it stated WFD considered the agreement null and void, but did not offer to repay the initial $82,500. Quiring responded on May 24, threatening to take legal action unless North Star was allowed to perform

under the agreement.  WFD did not assent.  North Star sought to resuscitate and perform the agreement three times in June and July, and sent a "Memorandum of Insurance" in June through its counsel explaining its coverage.  On October 19, North Star's comptroller sent a letter to WFD seeking to complete performance and specifically offering to list WFD as an "additional insured" on North Star's policy in response to WFD's insurance demands.

On July 19, 2004, WFD sued North Star for breach of contract.  North Star counterclaimed, alleging WFD had breached the agreement.  A bench trial followed, and the District Court ruled in North Star's favor on December 15, 2004.  It found North Star had presented adequate evidence of insurance, that North Star had asked in good faith to make the second payment on May 19 without objection by WFD, and that WFD's theft allegations were not supported by credible evidence.  The court concluded WFD had made a business decision to prevent performance of the agreement by North Star, and that this was a breach.  It awarded damages to North Star and ordered North Star to return the intellectual property to WFD.  WFD appealed from the judgment in January 2005.

Quiring had testified at trial that North Star was still in possession of the intellectual property and would be willing to return it to WFD.  But in a February 2005 telephone conference, counsel for North Star disclosed that the testimony had been inaccurate, and that North Star had sold all its assets to Gerdau Ameristeel, Inc., so that it was unable to return the intellectual property to WFD.  Citing this revelation, WFD moved for relief under Fed. R. Civ. P. 60(b).  The District Court issued an advisory

3

opinion on February 28, 2005, stating it was inclined to modify its judgment in an amount established at a valuation hearing on the intellectual property. WFD appealed from the advisory opinion, characterizing it as a denial of WFD's Fed. R. Civ. P. 60(b) motion.

We remanded the case to the District Court in an October 2005 Order, having already taken jurisdiction over WFD's appeal from the January judgment. Order, Oct. 12, 2005. A valuation hearing was conducted on October 26. Limited discovery was subsequently scheduled, but the District Court declared WFD's Fed. R. Civ. P. 60(b) motion moot on November 2, after the parties informed it they had reached a settlement agreement in principle. Negotiations ultimately fell apart, but North Star then reacquired the intellectual property from Gerdau Ameristeel. On March 16, 2006, it moved to reopen the case and have the valuation hearing requirement declared moot because North Star could now return the intellectual property to WFD. WFD responded a hearing was still required because the intellectual property's value had dropped, but the court granted North Star's motion to reopen the case and declared the valuation hearing requirement moot on March 23, 2006.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332 and pursuant to our Order of October 12, 2005. We have jurisdiction under 28 U.S.C. §§ 1291 and 1292.

On appeal from a judgment entered in a non-jury trial, we review findings of fact for clear error. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 572 (3d Cir. 2006); Fed. R.

4

Civ. P. 52(a).  We review the denial of relief from judgment under Fed. R. Civ. P. 60(b) for abuse of discretion.  *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 342 (3d Cir. 2003).

III.

WFD contends the District Court committed clear error in making three factual findings at trial.  In reviewing a district court's factual findings, our "sole function" is to review the record to determine whether we are "left with a definite and firm conviction that a mistake has been committed."  *Speyer, Inc. v. Humble Oil & Ref. Co.*, 403 F.2d 766, 770 (3d Cir. 1968).  We conclude there was no clear error in the challenged findings.

First, the District Court found North Star was adequately insured when its employees and subcontractors entered the steel mill to dismantle and remove equipment.  The agreement required North Star to provide all insurance coverages reasonably deemed necessary by WFD for its protection prior to North Star's entry.  WFD contends North Star was contractually required both to name WFD as an additional insured and to provide Pennsylvania workers' compensation insurance for its subcontractors, but failed to do either.  But there was evidence WFD expressed no concern over insurance until May 19, after North Star and its subcontractors had already begun dismantling and removing equipment from the steel mill.  Further, the Memorandum of Insurance suggested North Star was adequately insured, including as to workers' compensation coverage, under the agreement.  Two WFD witnesses testified they had no reason to believe North Star lacked the coverage described in the Memorandum at the time North

5

Star was attempting to perform under the agreement. The District Court's finding that North Star was adequately insured was not clearly erroneous.

Second, the District Court found WFD's theft allegations were not based on credible evidence. One WFD employee testified that, on arriving at the steel mill early in the morning on May 19, he discovered broken locks and doors and found North Star's subcontractors removing equipment from lockers. But he also testified he saw no-one attempting to take any equipment away. Moreover, his testimony was explicitly *not* proffered to show that a theft had occurred, but rather to show Snyder's state of mind in barring North Star from the steel mill. No witness testified to personal knowledge that persons associated with North Star stole anything from the steel mill, and two North Star witnesses testified nothing was stolen. The District Court's finding that WFD's theft allegations were not based on credible evidence was not clearly erroneous.

Third, the District Court found WFD made a business decision to prevent North Star from performing under the agreement. There was evidence WFD had been in contact with other potential buyers for equipment from the steel mill before it began negotiating with North Star, and Snyder testified he also spoke to a potential buyer *after* barring North Star from the steel mill. Additionally, there was evidence WFD repeatedly rejected North Star's offers to perform under the agreement from May through October 2004.[1]

_____

[1] WFD characterizes letters to WFD from North Star's counsel (dated July 7, 2004, before the instant action had even been filed) and comptroller (dated October 19, 2004) as settlement offers. Accordingly, WFD contends the District Court abused its discretion in

(continued...)

The District Court's finding that WFD made a business decision to bar North Star from the steel mill, thus preventing it from performing, was not clearly erroneous.

WFD also contends the District Court abused its discretion by holding the requirement of a valuation hearing on the intellectual property was mooted by North Star's reacquisition of the intellectual property, characterizing this as a denial of Fed. R. Civ. P. 60(b) relief. "An abuse of discretion may be found when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Reform Party of Allegheny County v. Allegheny County Dep't of Elections*, 174 F.3d 305, 311 (3d Cir. 1999). WFD contends the purpose of the District Court's judgment was to return the parties to the status quo ex ante, and that this required a determination of how much the value of the intellectual property to WFD had diminished because of its use by Gerdau Ameristeel. But the District Court explained during the February 2005 conference that the amount due North Star and its obligation to return the intellectual property were separate requirements of its judgment. "And if [North Star is] unable to [produce the intellectual property], then we'll have a

---

[1](...continued)
admitting the letters from North Star into evidence in violation of Fed. R. Evid. 408 and erred in relying on the October letter (and WFD's failure to respond) to conclude WFD made a business decision to terminate the agreement. These arguments are unavailing because Fed. R. Evid. 408 "is designed to exclude the offer of compromise only when it is tendered as an admission of the weakness of the offering party's claim or defense . . . ." 2 Kenneth S. Brown et al., *McCormick on Evidence* § 266 (6th ed. 2006). *See also* 29 Am. Jur. 2d *Evidence* § 510 (2006) ("Rule 408 is designed to avoid one party using material against the party who submitted the material for settlement purposes.").

prompt hearing on the value and, if necessary enter a judgment . . . as to the value . . . ."[2]
The District Court did not abuse its discretion in holding that North Star's reacquisition of the intellectual property mooted the requirement of a valuation hearing.

IV.

We will affirm.

---

[2] WFD emphasizes the fact that Gerdau Ameristeel used the customer list in contending the intellectual property's value to WFD has diminished, but at trial it contended North Star had obtained the benefit of the list as soon as it received it the list.